PEOPLE *v.* HENRY.

1. GAMING—OWNERSHIP OF PROPERTY LOST—STATUTES.
    Section 7795, 2 Comp. Laws 1915, giving a right to the loser to recover money or property lost in a gambling game—among other actions that of replevin—recognizes the money or property as belonging to him.

2. CRIMINAL LAW — ROBBERY — LARCENY—INSTRUCTIONS — ELEMENTS OF CRIME—INTENT.
    In a prosecution for robbery armed with a dangerous weapon, in violation of section 15206, 3 Comp. Laws 1915, where the defense was that defendant was only recovering money belonging to him lost in a crap game in a saloon, an instruction by the court, without defining the crime of larceny, that the jury, if they did not believe defendant guilty of robbery, being armed with a dangerous weapon, and, if resisted, with intent to kill, might convict of larceny from the person if they believed him guilty of that beyond a reasonable doubt, was erroneous, since the element of felonious intent is present in larceny the same as in robbery.

3. SAME.
    If defendant in good faith believed that the money which he demanded was his money, and that he was entitled to its possession, he could not be guilty of either robbery or larceny in taking it, because there would be no felonious intent.

4. SAME—TRIAL—INSTRUCTIONS—INTENT.
    *Held,* that the question of felonious intent should have been submitted to the jury, under proper instructions as to both robbery and larceny.

Error to the recorder's court of Detroit; Jeffries, J. Submitted June 13, 1918. (Docket No. 69.) Decided July 18, 1918.

Frank Henry was convicted of larceny, and sentenced to imprisonment for not less than 6 months

nor more than 5 years in the Detroit house of correction. Reversed.

*Proctor K. Owens* and *S. G. Thompson,* for appellant.

*Alex. J. Groesbeck,* Attorney General, *Charles H. Jasnowski,* Prosecuting Attorney, and *De Witt Merriam,* Assistant Prosecuting Attorney, for the people.

STONE, J.   The defendant was convicted of the crime of larceny of $26 lawful money of the United States, from the person of one Samuel Harris, under an information charging robbery, being armed with a dangerous weapon, in violation of section 15206, 3 Comp. Laws 1915.   Upon the trial the evidence was very conflicting.   On the part of the people it was testified that about 12 o'clock midnight of July 29, 1917, the defendant entered the saloon of Harris in the city of Detroit being armed with a revolver which he discharged into the ceiling in the presence of Harris, who testified:

"The defendant came up to me right away with his gun saying: 'Give me the money or I will kill you.' I was standing by the cash register behind the bar and he stuck the gun at me.   He says 'Give me money.'   I told him, 'Wait, I will give it right away.'   He said, 'Come on, give me your money or I will kill you right away.'   He pointed the revolver at me, shaking it that way.   I was scared to turn around, thinking he might shoot me in the back, so I said, 'Come on behind, I will give it to you.'   I opened the register, grabbed whatever I could give and put it on the bar," and that defendant took the money and went away.

On the part of the defendant it was testified that defendant went into the saloon of Harris earlier in the night and had been there induced by Harris to enter a gambling game called a "crap" game, then in progress in the saloon, in which he lost $27; that he asked

Harris to restore the money, which he refused to do; whereupon he went to his home, a short distance from the saloon, but soon returned to the saloon with a revolver. The defendant testified:

"The first thing as I stepped up to the door I made a shot into the ceiling. I was careful not to shoot any one. Right after that I stuck the revolver in my coat pocket. When I entered the saloon, I had no gun in my hand. There were some people scattered around the back side of the saloon. I said 'Give me my money,' to the saloon and to the fellows that robbed me. I said nothing to Harris. After the shot I saw him come from the back end, from around the barrels. Harris said to me, 'Hey, there, what is the matter?' I said, 'These fellows got my money and I would like to have some one restore it back.' He said, 'I don't want any of that thing around here; I will pay you, how much is it?' I said '$27.00.' And he went over to where the gamekeeper was sitting and brought me back $26.00. He said he didn't want that disturbance at that time of night. I told him, 'Thank you,' and walked out. * * * I went back there to get the money they robbed me of, and went home to get my gun."

The court was requested by defendant's counsel, among other things, to charge the jury as follows:

"5. I further charge you, gentlemen of the jury, that in considering all of the evidence in this case touching the matters involved, you will take into consideration all of the evidence in the case, and if you find, gentlemen of the jury, that the defendant only used that necessary force to repossess himself of his own property, which had been taken from him by crap game shooting in said saloon, then you cannot hold the defendant guilty of robbery as charged in the information.

"6. The Revised Statutes, chapter 156, of 1897 [2 Comp. Laws 1915, § 7795 *et seq.*], provides that any person obtaining money by card playing or shooting craps or shooting dice or any gambling device whatever, if the sum obtained by said playing is less than $25 the person obtaining said money is subject to a

fine of $100 or to be confined in jail for three months, or both such fine and imprisonment; if the person playing such crap game receives more money from such gambling than said sum of $25, then, if convicted, he shall be subject to a fine of $500, or twelve months in the county jail, or both such fine and imprisonment, in the discretion of the court. I further charge you, gentlemen of the jury, that this same statute which I have mentioned gives the loser of his money—which would be this defendant, if he lost his money in said saloon and by that method of crap shooting and gaming—a right to recover the same in cases of assumpsit for money had and received, or in an action of trespass on the case, or by replevin for and on behalf of the plaintiff. Therefore, I charge you that if this money was obtained by gambling, as aforesaid, from the defendant, that the prosecuting witness or any one who was present shooting crap games in said saloon, could not acquire any title to said property, because it is in contravention of the law to play such games, and they never come into the legal possession of said money; if you find these facts to be true from the evidence, gentlemen of the jury, you must acquit the defendant, as he is not guilty of the charge as set up in the information."

Neither of said requests was given. The trial court charged the jury in part as follows:

"I will charge you, if this defendant voluntarily went into what is known as a crap game and lost his money in that way and he came back and endeavored through violence and at the point of a revolver to secure his money back from Mr. Harris, I charge you, gentlemen of the jury, that under those circumstances that he would be guilty of robbery.

"It may be true, that if a man in your presence is attempting to steal your property and attempting to carry it away, you have a right to defend yourself, and you have a right to overcome him, and you have a right to retake your property; there is no question about that, but after voluntarily surrendering your money or surrendering your property, and then the property is out of your possession, out of your sight, then, gentlemen of the jury, it is not your province

or any man's province, rather, to undertake to take the law into his own hands, and by force and violence to make a reparation of the wrong done to him. That is for the courts, that is for the legal channels in the peaceful, orderly administration of the law, rather than by any man taking it by violence into his own hands. * * *

"But if this defendant went in there, as under the theory of the people, and did what they said he did, that is the people's witnesses, then, gentlemen of the jury, you should convict him, and if he went back there and did what the complainant, Harris, has said he did, that he came into the place and shot off the gun and pointed it at Harris, and secured the money which he had lost in a crap game, and attempted to take from Mr. Harris what he had previously lost in a crap game, then, gentlemen of the jury, he is guilty of the charge in the information. * * *

"But if he (the defendant) did lose the money at that crap game and then he went away and afterwards came back and held Mr. Harris up, as he described, laboring under the theory that he had lost his money in the previous crap game, and resented it, and attempted to get it back, I say to you, gentlemen of the jury, under those circumstances, the defendant would be guilty of the charge in this information. * * *

"Now, this information contains the charge of robbery—being armed with a dangerous weapon with intent to kill if resisted. It also contains the charge of larceny from the person. If you do not believe the defendant guilty of robbery, being armed with a dangerous weapon and if resisted with intent to kill, you may convict this defendant of larceny from the person, if you believe him guilty of that beyond a reasonable doubt. * * *

"This information contains also the charge of larceny. If you do not find the defendant guilty of the two offenses which I have just enumerated that are included in this information, beyond a reasonable doubt, then you may convict this defendant of larceny, if you believe him guilty of that beyond a reasonable doubt, gentlemen. If you find him guilty of that beyond a reasonable doubt, gentlemen of the jury, then fix the value of the property taken in your verdict."

After conviction the defendant was sentenced to imprisonment in the Detroit house of correction for a term of not less than 6 months, nor more than 5 years. He has brought the case here on writ of error. Error is assigned upon the refusal to charge as requested above, and to that part of the charge above set forth.

As defendant was not convicted of robbery and was only convicted of larceny, it is suggested that if there was error in that part of the charge relating to robbery it was harmless error. But it should be borne in mind that, without defining the crime of larceny, the jury were instructed that they might convict of larceny if they believed the defendant guilty of that crime, beyond a reasonable doubt. Yet the element of felonious intent is present in larceny, the same as in robbery. We are of the opinion that the foregoing request to charge should have been given. Our statute gives a right to the loser to recover the money or property lost in a gambling game—and among other actions gives that of replevin—thus recognizing the money or property as belonging to him. *Hess* v. *Culver*, 77 Mich. 598, 601; *Lassen* v. *Karrer*, 117 Mich. 512.

We are also of the opinion that there was prejudicial error in the charge. If the defendant in good faith believed that the money which he demanded was his money, and that he was entitled to its possession, he could not be guilty of either robbery or larceny in taking it, because there would be no felonious intent, "and if the defendant, for any reason whatever, indulged no such intent, the crime cannot have been committed." *People* v. *Walker*, 38 Mich. 156; *State* v. *Koerner*, 8 N. D. 292 (78 N. W. 981).

A case very much in point is that of *Thompson* v. *Commonwealth* in the court of appeals of Kentucky, 18 S. W. 1022. The opinion being brief, we quote it:

"The appellant was convicted of the crime of rob-

bing J. R. Barnes. The money that the appellant is accused of robbing said Barnes of, was won by Barnes from appellant that evening at an unlawful game; and the appellant thereafter presented his pistol on Barnes, and compelled him to return him the money thus won. Under our statute the title to the money won by Barnes did not pass to him, or from the appellant, nor did the right to its possession pass to Barnes, as against the appellant. It is a uniform rule that a person is not guilty of stealing that which belongs to him, and to which he has a right. Robbing is larceny, accompanied by violence, and putting the person from whom the property is taken in fear. Here the fact that the appellant was entitled to the money, and Barnes' possession of it was not rightful, as against the appellant, stripped the appellant's act of feloniously taking the property of another with the fraudulent intention of permanently depriving the owner of it."

The judgment was reversed. To the same effect are the following cases: *State* v. *Hollyway*, 41 Iowa, 200; *People* v. *Hall*, 6 Parker's Cr. R. (N. Y.) 642; *Rex* v. *Hall*, 3 Car. & Payne, 409.

The last cited case was an indictment for robbing John Green, a gamekeeper of Lord Ducie, of three hare wires and a pheasant. It appeared that the prisoner had set three wires in a field belonging to Lord Ducie, in one of which this pheasant was caught; and that Green, the gamekeeper, seeing this, took up the wires and pheasant, and put them into his pocket; and it further appeared that the prisoner, soon after this, came up and said: "Have you got my wires?" The gamekeeper replied that he had, and a pheasant that was caught in one of them. The prisoner then asked the gamekeeper to give the pheasant and wires up to him, which the gamekeeper refused; whereupon the prisoner lifted up a large stick, and threatened to beat the gamekeeper's brains out if he did not give them up. The gamekeeper fearing violence did so. Baron Vaughan said:

"I shall leave it to the jury to say whether the prisoner acted on an impression that the wires and pheasant were his property; for, however he might be liable to penalties for having them in his possession, yet, if the jury think that he took them under a *bona fide* impression that he was only getting back the possession of his own property, there is no *animus furandi*, and I am of opinion that the prosecution must fail."

There was a verdict of not guilty.

In our opinion the question of felonious intent in the instant case should have been submitted to the jury, under appropriate instructions as to both robbery and larceny, along the lines above indicated.

We find no other reversible error in the record. For the errors pointed out the judgment is reversed and a new trial granted.

OSTRANDER, C. J., and BIRD, MOORE, STEERE, BROOKE, FELLOWS, and KUHN, JJ., concurred.