PEOPLE v HOLCOMB

Docket No. 55048. Argued December 11, 1974 (Calendar No. 3).—
Decided November 25, 1975.

Thomas H. Holcomb was convicted of armed robbery in a jury
trial in Washtenaw Circuit Court, Ross W. Campbell, J., and
sentenced to a term of 35 years to life imprisonment. The Court
of Appeals, Bronson, P. J., and McGregor and Danhof, JJ.,
affirmed the conviction, but remanded for resentencing (Docket
No. 12719). Defendant appeals, asserting as error the denial of
his motion before trial that he be allowed to conduct his own
defense, and that the court erred in its instruction to the jury
on the element of intent. *Held:*

1. A defendant in a criminal case has a Sixth Amendment
right to refuse to be represented by a lawyer and to conduct his
own defense. The accused may choose to represent himself
knowingly and intelligently after being made aware of the
dangers and disadvantages of self-representation. Neither the
quality of a defendant's advocacy nor his technical legal knowl-
edge are relevant to an assessment of his knowing exercise of
the right to defend himself.

2. Felonious intent is an element of armed robbery, and
where the defendant testified that he went to the complainant's
room to ask for money back that he had paid the complainant
for bad drugs, and not to rob him, the jury, if it believed the
defendant, could not properly convict him of armed robbery. An
instruction to the jury that wrongful acts knowingly or inten-
tionally committed can neither be justified nor excused on the
ground of innocent intent tended to negate the intent element
of armed robbery and to vitiate the defense of lack of intent,
and was error.

3. In this case, the record does not show whether or not the
defendant, in moving to represent himself, was literate, compe-
tent, and understanding and voluntarily exercising his in-
formed free will. It is improbable that at this late date it could

REFERENCES FOR POINTS IN HEADNOTES
[1–3] 67 Am Jur 2d, Robbery §§ 15–19.
[4–10] 21 Am Jur 2d, Criminal Law §§ 310, 311.

be demonstrated that the defendant could not have been adequately apprised of the nature of the right to proceed *pro se* and of the consequences of the exercise of that right, and that therefore the court was justified in denying the motion. Accordingly, the case is reversed and remanded for a new trial.

Coleman, J., dissented on the grounds that the trial judge properly exercised his discretion in finding that the defendant was not competent to waive counsel based upon psychiatric reports and defendant's demonstrative behavior in the courtroom. The right of an accused to represent himself is not absolute when it conflicts with the public interest in ensuring a fair trial. Although the right to counsel may be waived, it is the duty of the trial court to determine whether the waiver is voluntarily and intelligently made. The rule of self-representation as interpreted under the facts herein should only apply to trials started after the date of the decision upon which the new rule purports to be based (*Faretta v California,* 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 [1975]), June 30, 1975.

47 Mich App 573; 209 NW2d 701 (1973) reversed.

OPINION OF THE COURT

1. ROBBERY—ELEMENTS OF CRIME—INTENT.

Felonious intent is a requisite element of armed robbery, and if a defendant did not have felonious intent, as where he believed in good faith that money which he demanded was his money and that he was entitled to its possession, he did not commit the crime of robbery or larceny in taking the money.

2. ROBBERY—ELEMENTS OF CRIME—INTENT.

If a jury believed the testimony of a defendant charged with armed robbery that he intended to ask the complainant for the return of money that he had paid the complainant for defective drugs and that he did not intend to rob the complainant, it could not properly convict him of armed robbery.

3. ROBBERY—ELEMENTS OF CRIME—INTENT—INSTRUCTIONS TO JURY.

An instruction to the jury in a trial for armed robbery that wrongful acts knowingly or intentionally committed can neither be justified nor excused on the ground of innocent intent was erroneous because it tended to negate the intent element of armed robbery and to vitiate the defense, where the defense was that the defendant did not intend to rob the complainant, but to recover money he had paid the complainant for defective drugs.

4. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE—CONSTITUTIONAL LAW.

A defendant in a criminal case has a Sixth Amendment right to

refuse to be represented by a lawyer and to conduct his own defense (US Const, Am VI).

5. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE—CONSTITU-
TIONAL LAW.

To represent himself and conduct his own defense, an accused must knowingly and intelligently forego the traditional benefits associated with the right to counsel; he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open.

6. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE.

In a criminal case in which the accused wishes to conduct his own defense, the trial judge should inform him of the dangers and disadvantages of self-representation and seek affirmatively to establish on the record that the accused knows what he is doing and that his choice is made with eyes open; the record should show whether the defendant is literate, competent, and understanding of the choice which confronts him and voluntarily exercising his informed free will.

7. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE—CONSTITU-
TIONAL LAW.

Neither the quality of a defendant's skill in advocacy nor his technical legal knowledge are relevant to an assessment of his knowing exercise of the right to defend himself in a criminal case.

DISSENTING OPINION

COLEMAN, J.

8. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE—WAIVER OF
COUNSEL.

*A trial judge exercised the necessary discretion in reaching his decision that a defendant was not competent to waive representation by counsel and to represent himself where the court relied upon a report of the center for forensic psychiatry, psychiatric evidence, and defendant's demonstrative behavior, including prior disruptive conduct before the judge, and found that the defendant lacked the intelligence and capacity to appreciate the consequences of his request to represent himself.*

9. CRIMINAL LAW—TRIAL—CONDUCT OF OWN DEFENSE—WAIVER OF
COUNSEL.

*The right of the accused to represent himself at trial is not*

*absolute when it conflicts with the interest of the public in
ensuring a fair trial; while the right to counsel may be waived,
it is always the duty of the trial court to determine whether
the waiver is voluntarily and intelligently made.*

10. CRIMINAL LAW—CONDUCT OF OWN DEFENSE—PROSPECTIVE APPLI-
CATION.

*The rule of self-representation that an accused may choose to
represent himself if he is found to be literate, competent, and
understanding and voluntarily exercising his informed free
will, as interpreted under the facts, should apply only to trials
started after June 30, 1975, the date of the decision of the
Supreme Court of the United States upon which the rule
purports to be based.*

*Frank J. Kelley,* Attorney General, *Robert A.
Derengoski,* Solicitor General, *William F. Delhey,*
Prosecuting Attorney, and *John L. Thompson,* As-
sistant Prosecuting Attorney, for the people.

State Appellate Defender Office, by *Roger L.
Wotila,* for defendant.

LEVIN, J. Thomas Holly Holcomb was convicted
of armed robbery. The Court of Appeals affirmed,
but remanded for resentencing.[1]

Before trial, Holcomb requested that he be al-
lowed to represent himself. The trial court, relying
on the Forensic Center psychiatric report that
Holcomb was competent to stand trial, denied the
motion.

We reverse on the authority of *Faretta v Califor-*

---

[1] The Court of Appeals held that Holcomb's sentence of "35 years to
life" violated MCLA 769.9; MSA 28.1081, which provides that "[i]n no
case can a valid sentence be hereafter made in which the maximum
penalty shall be life imprisonment with a minimum for a term of
years included in the same sentence". *People v Holcomb,* 47 Mich
App 573, 590; 209 NW2d 701 (1973).

*nia,* 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975),[2] where the United States Supreme Court held that a defendant in a criminal case has a Sixth Amendment right to refuse to be represented by a lawyer and to conduct his own defense.

Because we remand this case, we also address a question raised by Holcomb likely to recur on retrial.[3]

I

Holcomb was charged with stealing a portable radio from Chris Holzapfel, a student at Eastern Michigan University.

Holcomb, accompanied by Michael Jerome Harper and Arthur Michenor, visited a friend on campus and then went to Holzapfel's dormitory.

Holzapfel testified that when, in response to a knock on the door of his room, he opened the door Holcomb "pulled out a gun and shoved [him] back into the corner of the room and the other two just kind of rummaged around through the room".

[2] Holcomb argues that his right to represent himself is an "absolute" one guaranteed by art 1, § 13 of the Michigan Constitution of 1963 which provides: "A suitor in any court of this state has the right to prosecute or defend his suit, either in his own proper person or by an attorney."

Additionally, he contends that he has a statutory right to proceed *pro se:* "On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself * * * ." MCLA 763.1; MSA 28.854.

The decision of the United States Supreme Court in *Faretta v California* holding that the right of a criminal defendant to proceed *pro se* is guaranteed by the Sixth Amendment and applicable to the states through the Fourteenth Amendment of the United States Constitution makes it supererogatory to consider either the Michigan constitutional provision or the statute.

[3] Holcomb also contends that his rights were abridged by the judge's denial of his requests for a continuance and for substitute counsel and he asserts that he was denied the effective assistance of counsel. Our disposition of this case makes it unnecessary for us to address these issues.

Holzapfel said he attempted to "shove the gun away", then "got in a little argument" with Holcomb, and eventually succumbed when struck on the head with the gun. Holcomb tied Holzapfel up and left. A stereo tape deck, and radio were missing.

Harper testified that, believing Holcomb was going to another friend's room, he followed him to Holzapfel's hallway. Harper stopped for a drink of water "about three or four minutes maybe" and as he approached Holzapfel's open door he saw Holcomb "sitting on [Holzapfel], he was beating, he was beating on him." Harper said that Holcomb directed Michenor to take "the tape or something". As Harper left, Michenor handed him some of the stolen equipment. Harper and Michenor were then apprehended.

Holcomb testified that Holzapfel had sold him some "bull drugs" which made his "head hurt." When Holcomb confronted Holzapfel with this charge, Holzapfel "swung" at him and told him he was in the wrong building. Holcomb denied entering Holzapfel's room with a gun, striking Holzapfel with the gun, or taking anything from the room. He made no demand on Holzapfel, but only "*asked* for [his money]". (Emphasis supplied.)

Holcomb said he tied Holzapfel up "because he wouldn't give me no money back and [Holcomb] got mad".

Holcomb reiterated that he went to Holzapfel to get his money back, not to rob him: "I am not guilty of armed robbery. I might have committed a crime, but the intention wasn't going to stick no one up. I went to ask for my money back, [and] there was a fight there."

In his short summation, Holcomb's lawyer ar-

gued that Holcomb lacked the requisite felonious intent:

"The defendant has denied the armed robbery, he has admitted to an assault to recover some money.

"[H]e has admitted the assault * * * for the purpose of recovering payment of money for defective drugs."

In instructing the jury, the judge defined the crime of armed robbery as a taking with "a felonious intent and without any claim or color of right".

However, in elaborating on the requisite intent, he further instructed the jury that "[w]rongful acts, knowingly or intentionally committed can neither be justified nor excused on the grounds of innocent intent."[4]

---

[4] "Now, the question of the intent, the question of intent is one that is hard to establish directly because grown persons do not always disclose the object they have in view in any action in which they may indulge. You have to gather the intent from the character of the act, the circumstances surrounding it and from the conduct of like character which may appear as tending to aid you in finding and discovering it, but in connection with all this, unless the testimony satisfies you of something else, you are warranted in holding a party responsible for the natural, probable and legitimate consequences of his acts. The intent may be presumed from the doing of a wrongful, fraudulent or illegal act but this inference or presumption is not necessarily conclusive. The law presumes that every man intends the legitimate consequences of his own acts. Wrongful acts, knowingly or intentionally committed can neither be justified nor excused on the grounds of innocent intent.

"When an act forbidden by law is intentionally done, the intent to do the act is the criminal intent which imparts to the character of the offense and no one who violates the law which he is conclusively presumed to know, can be heard to say that he had no criminal intent to do the forbidden act. A party cannot excuse himself for an act intentionally done which is in itself a violation of law by saying that he did not so intend because where an act is unlawful in itself, the law presumes it was done with an unlawful intent, but where acts are equivocal, as in this case, they become criminal only by reason of the intent with which they are done. Both the commission of the act and the criminal intent with which it is committed must unite to constitute the offense and both must be proved in such case unless the criminal intent is proved, the offense is not proved. 'The question of

Felonious intent is a requisite element of armed robbery. This Court, in reversing a conviction in *People v Henry,* 202 Mich 450, 455; 168 NW 534 (1918), said:

"If the defendant in good faith believed that the money which he demanded was his money, and that he was entitled to its possession, he could not be guilty of either robbery or larceny in taking it, because there would be no felonious intent, 'and if the defendant, for any reason whatever, indulged no such intent, the crime cannot have been committed.' *People v Walker,* 38 Mich 156 [1878]; *State v Koerner,* 8 ND 292; 78 NW 981 [1899]."

Holcomb testified that he went to Holzapfel's room "to *ask* for [his] money back", he did not intend to rob Holzapfel. (Emphasis supplied.)

If a jury believes Holcomb, it may not properly convict him of armed robbery. A jury instructed that "[w]rongful acts" are not "excused on the ground of innocent intent", might feel compelled to return a verdict of guilty of armed robbery despite its belief that Holcomb's intent was "innocent", not felonious.

The instruction given tended to negate the intent element of armed robbery[5] and to vitiate

the intent is one that is hard to establish directly because as I have indicated, grown persons do not always disclose the object they have in view in any acts which they may indulge and you have to gather the intent from the character of the acts, the circumstances surrounding it and from the conduct of a like character which may appear as tending to aid you in finding and discovering it. Intent, except when confessed is a matter of inference. Intent, unless confessed, can only be proved by acts, as jurors cannot look into the breast or heart of the accused. Jurors have to draw inferences as to the intent with which a particular act was done as they draw all other inferences from any fact in evidence, which to their minds fairly proves its existence."

[5] Holcomb's counsel neither requested an instruction nor objected to the instruction given.

Because we are reversing on account of the denial of defendant's asserted right to proceed *pro se,* we need not decide whether this

Holcomb's defense. On retrial, that portion of the instruction on intent should not be given and a correct instruction on this essential element of the offense charged should be given.[6]

## II

On the morning of trial, before a jury was impaneled, Holcomb moved to substitute counsel ("I would like to have a new lawyer") or alternatively to proceed as his own counsel ("I would like to defense this my own self").

The judge, after reading from Holcomb's psychiatric report prepared by the Forensic Center in evaluating his competency to stand trial, denied his motion because "it would not be in the best interest of the defendant, would not afford him a proper defense, would not satisfactorily protect his constitutional rights if he were permitted to represent himself and not have the benefit of a trained experienced and skilled counsel, that if he were to attempt to defend himself his demeanor before the jury would probably result in irreparable prejudice against him".

Subsequently, near the completion of the people's case, the judge elaborated "for the benefit of the appellate court" his reasons for denying Holcomb's request.

First, he noted that the defendant's right to proceed *in propria persona* is not, according to

___

failure to object constituted a waiver of the instructional error. In this regard we note, however, that a judge has the duty properly to instruct the jury on all the essential elements of the crime. *See People v Guillett,* 342 Mich 1, 7–8; 69 NW2d 140 (1955); *People v Oberstaedt,* 372 Mich 521, 526; 127 NW2d 354 (1964).

[6] While the trial judge adopted his instructions directly from Gillespie, Michigan Criminal Law & Procedure (2d ed), § 906, form 337, and in so doing no doubt acted in good faith, Gillespie is simply another treatise. Gillespie instructions do not have the force of precedent and are not protected by the principle of stare decisis.

ABA standards, an "absolute right". Then he read portions of Holcomb's competency report into the record and concluded:

"[T]hat this man is not qualified mentally, properly to represent himself and secondly, that to attempt—for him to attempt to do so would clearly and without question result in disruption of trial proceedings and the probability of a mistrial."

In *Faretta v California, supra,* the United States Supreme Court held that a defendant in a criminal case has a Sixth Amendment right to refuse to be represented by a lawyer and to conduct his own defense. In so holding, the Court declared that in order to represent himself the accused must "knowingly and intelligently" forego the traditional benefits associated with the right to counsel. The Court said: "he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that 'he knows what he is doing and his choice is made with eyes open.'"

The record in that case affirmatively showed that Faretta was "literate, competent, and understanding, and that he was voluntarily exercising his informed free will".

In this case, the record does not affirmatively show that Holcomb was literate, competent, understanding and voluntarily exercising his informed free will. But neither did the trial judge—no doubt because he could not anticipate *Faretta v California*—seek to establish on the record that Holcomb did not know what he was doing or that he was not literate, competent, understanding and voluntarily exercising his informed free will.

We have considered remanding this case for determination whether Holcomb was at the time

"literate, competent, and understanding", and "voluntarily exercising his informed free will".

We are of the view, however, that it is most improbable at this late date that it could satisfactorily be demonstrated that Holcomb could not have been adequately apprised of the nature of the right to proceed *pro se* and of the consequences of the exercise of that right and, therefore, the court was justified in depriving him of the right to represent himself. Accordingly, we reverse and remand for a new trial.[7]

If Holcomb again requests to proceed *pro se,* the trial judge shall inform him of the "dangers and

---

[7] The United States Supreme Court has accorded retroactive effect to its decisions recognizing a criminal defendant's right to counsel at trial, *Gideon v Wainwright,* 372 US 335; 83 S Ct 792; 9 L Ed 2d 799, 93 ALR2d 733 (1963) *[Kitchens v Smith,* 401 US 847; 91 S Ct 1089; 28 L Ed 2d 519 (1971)] and *Argersinger v Hamlin,* 407 US 25; 92 S Ct 2006; 32 L Ed 2d 530 (1972) *[Berry v Cincinnati,* 414 US 29; 94 S Ct 193; 38 L Ed 2d 187 (1973)]; at certain arraignments, *Hamilton v Alabama,* 368 US 52; 82 S Ct 157; 7 L Ed 2d 114 (1961) *[Walton v Arkansas,* 371 US 28; 83 S Ct 9; 9 L Ed 2d 9 (1962)] and *White v Maryland,* 373 US 59; 83 S Ct 1050; 10 L Ed 2d 193 (1963) *[Arsenault v Massachusetts,* 393 US 5; 89 S Ct 35; 21 L Ed 2d 5 (1968)], at sentencing, *Mempa v Rhay,* 389 US 128; 88 S Ct 254; 19 L Ed 2d 336 (1967) *[McConnell v Rhay,* 393 US 2; 89 S Ct 32; 21 L Ed 2d 2 (1968)] and on appeal, *Douglas v California,* 372 US 353; 83 S Ct 814; 9 L Ed 2d 811 (1963) *[Holmes v California,* 372 US 710; 83 S Ct 1020; 10 L Ed 2d 126 (1963)].

In these cases, the Court, citing *Linkletter v Walker,* 381 US 618, 639; 85 S Ct 1731; 14 L Ed 2d 601 (1965), found that the right to counsel related to "the very integrity of the fact-finding process".

We see no reason to treat differently the right to proceed *pro se.* The right to representation at trial, whether by counsel or by the defendant himself, affects the truth and accuracy of the guilt determining process.

To deny retroactive effect to the right to proceed *pro se* on the ground that the right to counsel at trial enhanced the reliability of the fact-finding process while the right to proceed *pro se* inhibits or lessens the probability that the defendant's case will be adequately presented would be to reject the premise of *Faretta v California, supra,* fn 2.

In Sixth Amendment terms, the right to proceed *pro se* is not qualitatively different from the right to counsel and accordingly, unless and until the United States Supreme Court limits the application of that right, we will accord it full retroactive effect.

disadvantages of self-representation" and seek affirmatively to establish on the record that Holcomb "knows what he is doing and his choice is made with eyes open". The record should show whether the defendant is "literate, competent and understanding" of the choice which confronts him and "voluntarily exercising his informed free will" in declining to be represented by counsel and in seeking to represent himself.

Neither the quality of a defendant's advocacy skills nor his technical legal knowledge are "relevant to an assessment of his knowing exercise of the right to defend himself". *Faretta v California, supra.*[8]

Reversed and remanded for a new trial.

T. G. KAVANAGH, C. J., and WILLIAMS, and FITZGERALD, JJ., concurred with LEVIN, J.

LINDEMER, J., took no part in the decision of this case.

M. S. COLEMAN, J. *(dissent).* Leave to appeal was granted to explore the right of a defendant to represent himself under the circumstances at bar.

After all persons necessary to the trial, including defendant's attorney, were present and prepared to go forward, defendant asked the court first for another attorney and next asked to represent himself.

The circuit judge, who had previously observed

---

[8] It was not proper for the trial judge to consider in denying defendant's request to proceed *pro se* his belief that "to permit him to proceed to represent himself would result in trial disruption, could not help but prejudice the defendant's right to a fair trial".

Nor was it relevant that the court had appointed for the defendant "trained, experienced and skilled" counsel who "is held in the highest respect by all members of the bar of this county".

defendant's behavior, had in hand a relevant psychiatric report and had spoken with defendant on the trial date, followed prevailing law and American Bar Association standards in reaching his conclusion that defendant could not voluntarily and knowingly waive his right to counsel.

My colleagues rely upon *Faretta v California,* 422 US 806; 95 S Ct 2525; 45 L Ed 2d 562 (1975), and applying their interpretation retroactively would reverse the conviction. I would find that the trial judge, with admirable foresight, complied with the *Faretta* rationale. In any event, I would not apply the interpretation retroactively.

## I.

The law as to self-representation was well settled when the American Bar Association published suggested guidelines in 1971. The trial judge followed both. First, we look to case law important to the state of the law in 1971.

In speaking of waiver of counsel, the United States Supreme Court stated in *Johnson v Zerbst,* 304 US 458; 58 S Ct 1019; 82 L Ed 1461 (1938):

"The determination of whether there has been an intelligent waiver of the right to counsel must depend, in each case, upon the particular facts and circumstances surrounding that case, including the background, experience, and conduct of the accused."

Defendant replied negatively to the court's inquiry as to whether he wished counsel in *Moore v Michigan,* 355 US 155; 78 S Ct 191; 2 L Ed 2d 167 (1957). He wanted to "get it over with". The Court found that because of defendant's youth and lack of education, intervention of counsel was not intelligently waived. The Court also found the convic-

tion invalid because the "circumstances show that his rights could not have been fairly protected without counsel".

In vacating a 1963 Arizona conviction[1] in which a defendant chose to represent himself, the United States Supreme Court spoke approvingly of the *Johnson, supra* language with respect to the duty of the trial judge:

"This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused."

In addition to following the prevailing common law, the trial judge used the American Bar Association standards relating to the election of a defendant to represent himself at trial (May, 1971):

"A defendant should be permitted at his election to proceed in the trial of his case without the assistance of counsel only after the court makes thorough inquiry and is satisfied that he

"(a) possesses the intelligence and capacity to appreciate the consequences of his decision; and

"(b) comprehends the nature of the charges and proceedings, the range of permissible punishments, and any additional facts essential to a broad understanding of the case.

"*Commentary*

"Although Federal statutes (28 UCS § 1654) and many state constitutions, *e.g.,* Art 1, § 9, Constitution of Pennsylvania, authorize defendants in criminal cases to represent themselves, the right is not absolute. *The defendant's Sixth Amendment right to the assistance of counsel cannot be abrogated unless knowingly and intelligently waived, however strongly the defendant may desire to proceed alone.* See *Von Moltke v Gillies,* 332

---

[1] *Westbrook v Arizona,* 384 US 150; 86 S Ct 1320; 16 L Ed 2d 429 (1966).

US 708 [68 S Ct 316; 92 L Ed 309] (1948); ABA Standards, Providing Defense Services, §§ 7.1–7.3. (Approved Draft, 1968). Particularly when a trial is involved, the interest of the public in an orderly, rational trial is entitled to consideration in determining the defendant's right to appear *pro se.* See *United States v Bentvena,* 319 F2d 916, 937 (CA 2, 1963); *Butler v United States,* 317 F2d 249, 258 (CA 8, 1963).

\* \* \*

"Most defendants who seek to appear *pro se* do so in ignorance of the value of counsel and of their own inadequacies, or out of paranoid distrust of appointed counsel. More sophisticated motives may include the hope that the absence of counsel may afford a basis for reversal of a conviction regarded as inevitable, or a desire to ventilate societal hostility through the dramatic vehicle of a disorderly trial. See generally, Laub, *The Problem of the Unrepresented, Misrepresented and Rebellious Defendant in Criminal Court,* 2 Duquesne L Rev 245 (1964). *None of these sources of the desire to dispense with counsel outweigh the rights of codefendants, or the interest of the public in a just and orderly trial. Nor do they require the court to disregard the long-term interest of the accused in having guilt or lack of guilt fairly determined."* ABA Project on Standards for Criminal Justice: Standards Relating to the Judge's Role in Dealing with Trial Disruptions, Standard C.2 and commentary, pp 10, 11 (Tentative Draft, May 1971). (Emphasis added.)

In reaching his decision that defendant was not competent to waive counsel, the circuit judge here relied upon "the forensic report, psychiatric evidence, and defendant's demonstrative behavior, including prior disruptive conduct before [the judge]". After carefully following the existent law and the ABA standards, the trial judge concluded that defendant was competent to stand trial. As to self-representation, the judge said:

*"I do not, however, find that the defendant possesses*

*the intelligence and capacity to appreciate the conse-
quences of his decision to represent himself in the case
and proceed to trial without the assistance of counsel,*
even advisory counsel, nor do I find that he compre-
hends all of the facts essential to a broad understanding
of the case which would be necessary for him to prop-
erly represent himself, and it is for these reasons that I
have felt that the protection of the defendant's rights
requires that he have counsel, notwithstanding his
desire to proceed without counsel." (Emphasis added.)

In this careful manner, the judge exercised the
necessary discretion.

## II.

Shortly after this decision the Court of Appeals
decided the matter of *People v Kirkland,* 40 Mich
App 22; 198 NW2d 811 (1972), wherein it under-
scored the basic concept that

"The right of the accused to represent himself at trial
is not absolute when it conflicts with the interest of the
public in ensuring a fair trial. * * * While the right to
counsel may be waived, it is always the duty of the trial
court to determine whether the waiver is voluntarily
and intelligently made."

Such has been the Michigan precedent.

## III.

Then in 1975 came *Faretta.* The majority reach
the conclusion that *Faretta* demanded defendant's
right to represent himself. I can find nothing in
the Federal opinion or the facts of this case to
support that finding.

First, the *Faretta* concepts are those employed
by the court in this matter. That Court said:

"When an accused manages his own defense, he relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel. For this reason, in order to represent himself, the accused must 'knowingly and intelligently' forego those relinquished benefits. *Johnson v Zerbst,* 304 US 458, 464–465; 58 S Ct 1019; 82 L Ed 1461; 146 ALR 357 [1938]. *Cf. Von Moltke v Gillies,* 332 US 708, 723–724; 68 S Ct 316, 323; 92 L Ed 309 [1948] (plurality opinion of Black, J.)"

The record reveals a man unable to represent himself in any but a self-defeating manner. For instance, defendant asked that his appointed counsel be dismissed. He explained his reasons as:

"He ain't handling my case right, by *(sic)* grandmother died, I tried to get out on—she died since I have been in jail, she died two days ago, my people have been trying to get me out on bond and I would like to defense this my own self * * * ."

Defendant's attorney said he had visited his client at least four times in jail and the court noted his attempts to have bond lowered and the court's refusal.

The court noted defendant's prior disruptive behavior (which was personally observed) and also the Forensic Center report

"that the defendant exhibited confusion, rambling speech and occasionally incoherent mutterings and exhibited * * * personality features suggesting of an explosive and impulsive personality."

The report stated that defendant

"could become expansive one time and then very quickly change his mood showing angry and threaten-

ing behavior. * * * however when any attempt was made to discuss the charge with him the patient became belligerent and sullen and refused to consider making a defense for himself."

Defendant's attorney also noted his client's lack of interest in the details of his case other than bond.

*Faretta* requires that

" 'he knows what he is doing and his choice is made with eyes open.' *Adams v United States ex rel McCann,* 317 US 269, 279; 63 S Ct 236; 87 L Ed 268 [143 ALR 435 (1942)]."

Although this case was decided four years prior to *Faretta,* the judge fulfilled its basic requirements. He also adhered to the standards of 1971 and those upon which subsequent development of the concept has been built.

For reasons which I do not find apparent in the record, my colleagues find that the court failed to determine whether defendant was "literate, competent, and understanding". They cite *Faretta* as retroactive precedent.

## IV.

Although I would find that the requirements of *Faretta* have been met, the argument of retroactive applicability of the opinion deserves analysis.

In *Johnson v New Jersey,* 384 US 719; 86 S Ct 1772; 16 L Ed 2d 882 (1966), the United States Supreme Court thoroughly discussed the subject of retroactive treatment. The Court held that *Escobedo v Illinois,* 378 US 478; 84 S Ct 1758; 12 L Ed 2d 977 (1964), and *Miranda v Arizona,* 384 US 436; 86 S Ct 1602; 16 L Ed 2d 694 (1966), affected only

those cases in which the trial began after the date of the respective decisions.

The Court noted three general rules governing retroactivity: (1) "[T]he choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved."[2] (2) The retroactivity question must be determined " 'in each case' by looking to the peculiar traits of the specific 'rule in question' ". The reason for this is that "[e]ach constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice * * * ".[3] (3) Protection of "the integrity of the truth-determining process at trial" is a crucial factor to consider.[4]

Further, the Court stated that "We must look to the purpose [of the newly adopted constitutional rule], the reliance which may have been placed upon prior decisions on the subject, and the effect on the administration of justice of a retroactive application * * * ".[5]

For example, in *Linkletter v Walker,* 381 US 618; 85 S Ct 1731; 14 L Ed 2d 601 (1965), the Court denied retroactive application of *Mapp v Ohio,* 367 US 643; 81 S Ct 1684; 6 L Ed 2d 1081 (1961). The Court reasoned that *Mapp* affected evidence "the reliability and relevancy of which is not questioned". In *Tehan v Shott,* 382 US 406; 86 S Ct 459; 15 L Ed 2d 453 (1966), the Court denied retroactive application to *Griffin v California,* 380 US 609; 85 S Ct 1229; 14 L Ed 2d 106 (1965).

On retroactive application of *Miranda* and *Escobedo,* the *Johnson* Court stated that "the prime

---

[2] *Johnson, supra,* at 728.

[3] *Johnson, supra,* at 728.

[4] *Johnson, supra,* at 729.

[5] *Johnson, supra,* at 727.

purpose of these rulings is to guarantee full effectuation of the privilege against self-incrimination * * * ".

The Court explained its decision not to invoke retroactivity. One factor was the disruptive effect of retroactivity:

"[R]etroactive application of *Escobedo* and *Miranda* would seriously disrupt the administration of our criminal laws. It would require the retrial or release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards."

Not only did the Court deny retroactivity to final convictions, but also cases pending on appeal:

"All of the reasons set forth above for making *Escobedo* and *Miranda* nonretroactive suggest that these decisions should apply only to trials begun after the decisions were announced."

Applying the *Johnson* analysis, *Faretta* should in any event be applied only to trials commencing after its decision date. Because the instant case long preceded *Faretta,* defendant should not be allowed to assert its holding.

However, even *Faretta* does not require a judge to permit self-representation under the facts of this case. The judge had a sound basis for his decision based upon his personal observations and discussions in court as well as upon the Forensic Center report. No formal format was required in 1971, nor do I believe it a requirement under *Faretta.* Indeed, if defendant had been allowed to proceed *in propria persona,* there would have been good grounds for reversal. The judge steered a precise course between Scylla and Charybdis.

Retroactivity of judicial decisions has long been a matter of concern primarily because of its effect upon bench and bar who proceeded as required by the law of a given date only to find years later that they should have been omniscent. Orderly development of law and social progress usually can be achieved without throwing into confusion the public and all of those upon whom decisions may fall.

Generally speaking, retroactivity of *Faretta* as interpreted would cause disruption of the administration of criminal law. "It would require the retrial or release of numerous prisoners found guilty * * * in conformity with previously announced constitutional standards."

The majority interpretation of *Faretta* should only apply to trials started after the date of that decision. Similar to *Johnson,* future defendants may benefit from the new rule of self-representation, while past defendants may still utilize the previously existing Michigan case law.

There is no merit in the other challenges by defendant. No objection was made to the jury instruction, and no miscarriage of justice appears. Neither was defendant denied effective assistance of counsel.

I would affirm.