THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v LARRY COATES, Appellant.

Second Department, July 24, 1978

### APPEARANCES OF COUNSEL

*Larry Coates, pro se* and *William E. Hellerstein (Andrew C. Fine* of counsel), for appellant.

*Eugene Gold, District Attorney (Peter A. Norling* of counsel), for respondent.

### OPINION OF THE COURT

RABIN, J.

The appellant stands convicted of the felony murder (see Penal Law, § 125.25, subd 3) of an individual who won a

substantial amount of money in a local dice game. The prosecution proceeded on the theory that the appellant and two others sought to forcibly retake their losses and that, in the course of this robbery, the luckless dice winner was mortally wounded. The alleged robbery was set forth as constituting the underlying felony. The principal issues raised on appeal are: (1) whether the trial court committed reversible error in its charge on the affirmative defense which is available in felony murder prosecutions "in which the defendant was not the only participant in the underlying crime" (Penal Law, § 125.25, subd 3) and (2) whether the forcible retaking of one's gambling losses constitutes the crime of robbery? Both inquiries should be resolved in the affirmative.

### BACKGROUND

On July 28, 1972 the appellant participated in a street-side dice game. The deceased won a substantial amount of money in the game. However, there is disputed testimony concerning the extent of the victim's winnings and the appellant's losses. Amidst assertions that the victim had changed the dice, the appellant and two other persons who had participated in the game, attempted to recover their losses. The appellant grabbed the victim around the neck, dragged him across the street and held him while his two abettors attempted to go through the victim's pockets. When the victim resisted, he was stabbed by the appellant's accomplices. The three unsuccessful gamblers then fled the scene, apparently without having recovered their losses. The following day the victim died from the stab wounds. There was no testimony that the appellant either possessed or used a knife. Rather, there was some evidence that he attempted to prevent the stabbing and received several cuts for his efforts.

In its charge to the jury the court, although not requested to do so, instructed the jury on the affirmative defense which is available in felony murder prosecutions where the defendant is not the only participant in the underlying felony. In relating the appellant's burden of proving the affirmative defense to the prosecution's more pervasive burden of proving guilt beyond a reasonable doubt, the court charged, in part: "The burden of proof is on the People to prove the homicide, to prove there was murder beyond a reasonable doubt except where a defendant says he was engaged in the felony, forcible stealing but that he didn't know all of the elements involved.

Then, he has to prove that not by a reasonable doubt but by a preponderance of the evidence; do you understand?" This portion of the charge was excepted to on the ground that the "burden of proof never shifts from the prosecutor to the defendant."

Subsequently, the jurors interrupted their deliberations and requested to "hear the part where the defendant has to prove that he did not know if there was a weapon." At this juncture, defense counsel specifically requested that the court not recharge on the affirmative defense. This request was premised in defense counsel's statement that his strategy was simply to raise a reasonable doubt as to the appellant's guilt. Defense counsel alternatively requested that the court clarify to the jury that the burden of proof never shifts to the defendant. In recharging the jury, the court reiterated its instruction on the affirmative defense and further stated: "Now, he does not have to prove those elements beyond a reasonable doubt, as I have indicated, but he must prove them by a preponderance of the evidence. You don't want me to tell you what that is again, do you? Because of proving guilt is upon the defendant—upon the People, the District Attorney, excuse me, except where an affirmative defense is raised. Then proving an affirmative [sic] by a fair preponderance of the evidence as distinguished from reasonable doubt is upon the defendant; do you understand that? Does that answer the question that you had in mind? If you want me to give it to you in any other words, I'll give it to you." Defense counsel duly excepted to the court's response to the jury's request of what the "defendant has to prove".

The appellant was found guilty of felony murder and was sentenced as a predicate felon to an indeterminate term of 15 years to life imprisonment. The judgment should be reversed and a new trial ordered.

### THE IMPROPER CHARGE ON THE AFFIRMATIVE DEFENSE TO FELONY MURDER

■ The trial court did not err in exercising its discretion to charge on the affirmative defense to felony murder. The evidence adduced at the trial provided a firm foundation for such a charge. The trial record indicates that defense counsel did cross-examine prosecution witnesses concerning several elements of the affirmative defense (e.g., whether the appellant had stated that he did not know that his accomplices had weapons and whether he attempted to prevent the stabbing

[see Penal Law, § 125.25, subd 3, pars (c), (d)]). Unlike *People v Cofer* (48 AD2d 818), there was no substantial question as to whether the appellant participated in the underlying crime. Rather, the significant issue concerns whether the appellant, who did not stab the deceased, may nevertheless be held liable for the victim's death. Here, charging the affirmative defense was entirely appropriate and beneficial to the appellant. However, the charge which was given was so ineptly phrased as to constitute reversible error.

■ ■ Whenever a trial court charges a jury on a defendant's burden of establishing an affirmative defense, particular care must be taken lest the jury become confused as to the burden of proof necessary to support a conviction. The defendant need only establish an affirmative defense by a preponderance of the evidence (Penal Law, § 25.00, subd 2). However, this in no way diminishes the pre-existing and more pervasive requirement that the prosecution establish guilt beyond a reasonable doubt. It is essential that the jury understand that the assertion of an affirmative defense does not detract from the prosecution's burden.

■ Despite defense counsel's repeated requests that the above principle be unambiguously explained to the jury, the trial court entirely failed to clearly instruct the jury that the prosecution's burden to prove guilt beyond a reasonable doubt never shifts. Rather than charging that the jurors were to consider the affirmative defense only if they had first been satisfied that the appellant's guilt was established, the court improperly charged that the burden of proving guilt is on the prosecution "except where an affirmative defense is raised". That charge was necessarily confusing and misleading. Nor was the prejudicial defect cured by the over-all context of the charge (cf. *People v Robinson*, 36 NY2d 224).

FORCIBLE RETAKING OF GAMBLING LOSSES AS A ROBBERY

■ Robbery may be simply defined as a forcible larceny (see Penal Law, § 160.00). A person commits larceny when, "with intent to deprive another of property or to appropriate the same to himself or to a third person, he wrongfully takes, obtains or withholds such property from an owner thereof" (Penal Law, § 155.05, subd 1). The somewhat novel question here raised is whether the retaking of one's gambling losses can constitute a larceny. The appellant argues that there is no larceny on the interrelated grounds that: (1) the winner of

gambling proceeds is not an "owner" because title to the winnings does not pass; and (2) there is no felonious intent. Although these arguments have been advanced in other jurisdictions, they are not persuasive and are necessarily contrary to public policy.

As pointed out in the concurring opinion of Mr. Justice TITONE, it is the long-settled law in New York, and most other American jurisdictions, "that an individual who wins money or other consideration from another in an illegal game of chance does not acquire title to the winnings".* However, the narrow question of who possesses legal title is substantially irrelevant to a prosecution for larceny. The larcenous act is no more than the wrongful taking of property from an owner thereof (Penal Law, § 155.05). Nowhere is it required that the depossessed owner also be the title holder of the property.

The term "owner" is defined in subdivision 5 of section 155.00 of the Penal Law as follows:

" 'Owner.' When property is taken, obtained or withheld by one person from another person, an 'owner' thereof means any person who has a right to possession thereof superior to that of the taker, obtainer or withholder.

"A person who has obtained possession of property by theft or other illegal means shall be deemed to have a right of possession superior to that of a person who takes, obtains or withholds it from him by larcenous means.

"A joint or common owner of property shall not be deemed to have a right of possession thereto superior to that of any other joint or common owner thereof.

"In the absence of a specific agreement to the contrary, a person in lawful possession of property shall be deemed to have a right of possession superior to that of a person having only a security interest therein, even if legal title lies with the holder of the security interest pursuant to a conditional sale contract or other security agreement."

The key factor in the above definition is the actual possession of the property. Part of the commentary on the statutory definition of "owner" provides that "[i]t is a generally accepted principle that, in the larceny area, 'ownership' of property means 'possession' thereof, and that a person has possession of

---

* It is noteworthy that Texas takes the view that when willing participants to gambling voluntarily pass money, then the title to the money also passes upon actual possession of the winnings (see Ann. 77 ALR3d 1363, 1369).

property when he has any legally recognizable interest therein (52 C.J.S. § 13, p. 811)" (Hechtman, Practice Commentaries, McKinney's Cons Law of NY, Book 39, Penal Law, § 155.00, p 104). The commentary, while discussing the relationship between "owner" and "thief" when there is a security agreement, further states that "lawful possession of the moment is the salient factor, and that one who enjoys such is not chargeable with larceny in withholding the property from the titular owner and, indeed, becomes the victim of a larceny if the latter takes it from him under a claim of title based upon a security interest" (id., pp 104-105). It has been similarly stated that the term "owner" is generic and that it is "quite clear that what is intended is not necessarily the titleholder or even one with a right of possession * * * Not only need the person deprived have had no title, or even a special property, in the articles stolen (Phelps v. People, 72 N.Y. 334), but it is announced by the statute that a thief may now be prosecuted and punished for stealing from a thief" (1 Marks and Paperno, Criminal Law in New York Under the Revised Penal Law, pp 371-372).

From the above comments it is clear that whether the successful gambler possesses formal title to his winnings is an irrelevant consideration. The fact of actual possession is sufficient to satisfy the statutory requisite of ownership. Furthermore, upon analysis, it is apparent that this result is not inconsistent with the doctrine that formal title does not pass to the successful gambler.

It must be recognized that title is essentially a legal fiction created for the purpose of distinguishing between competing claims to property. Title symbolizes a person's right to ownership or the extent of the person's interest. Generally, title is a function of actual possession and the right of possession (see, generally, Ballentine's Law Dictionary [3d ed], "title", p 1279). The reason that title to gambling winnings does not pass is because gambling is illegal (General Obligations Law, § 5-401) and it would be contrary to public policy to sanction the retention of property gained through an unlawful activity. Nevertheless, because the parties are in pari delicto the unsuccessful gambler had no common-law right to recover his losses (see Meech v Stoner, 19 NY 26). Thus, even though not possessed of formal title, the winner was allowed to keep the proceeds. To remedy this situation, New York has long provided a statutory right of civil recovery. The present statute is

embodied in section 5-421 of the General Obligations Law, which provides: "Every person who shall, by playing at any game, or by betting on the sides or hands of such as do play, lose at any time or sitting, the sum or value of twenty-five dollars or upwards, and shall pay or deliver the same or any part thereof, may, within three calendar months after such payment or delivery, sue for and recover the money or value of the things so lost and paid or delivered, from the winner thereof." However, that statute does no more than give the losing gambler a limited right of recovery. Objectively viewed, he stands in no more secure a position than does the holder of a security interest. It is noteworthy that this right of action has the extremely short Statute of Limitations of three calendar months. Thus, although gaming and wagering is unlawful, it is the apparent policy of New York that the winner may maintain possession of his winnings, subject only to a civil suit to divest him of his winnings and, further, if the unsuccessful gambler fails to commence such suit within three months of the transfer of possession, then despite the absence of formal title, the winner is secure in his possession and the unlucky gambler is indeed a loser.

In the context of the limited civil remedy of divesting the winner of possession of his gaming proceeds, it is patently absurd to suggest that violent self-help will be tolerated. The losing gambler has violated the law to as great an extent as the winner. Having voluntarily engaged in the unlawful gaming enterprise, it must be held that the loser parts with ownership upon transfer of the wagered property, and that the winner gains ownership, subject to divestment, upon taking actual possession. Nor will this principle be disputed by any gambler who has ever been favored by the luck of the roll.

Having determined that, within the purview of the Penal Law, the deceased was the owner of the winnings, it must still be determined whether the individual who retakes gambling losses possesses the requisite larcenous intent. The appellant contends that the larcenous intent is absent because his acts were prompted by a claim of right. We find that there is no merit to the appellant's position.

The crime of larceny consists of two components: a specific criminal intent and a wrongful act. The act is the wrongful taking of property from an owner thereof. The requisite larcenous intent is merely the intent to deprive

another of property (cf. *People v Fucci,* 57 AD2d 559). When analyzed objectively, it is plain that the appellant intended to deprive the deceased of property (i.e., his winnings).

After the transfer of possession, the gambling loss assumes the status of a common debt, with the winner in the role of debtor and the loser as creditor. No longer does the loser have an absolute right of ownership. Rather, the winner's possession effectively makes him the owner, subject only to a suit pursuant to section 5-421 of the General Obligations Law. Thus, the appellant's alleged claim of right is no more than the right to pursue a civil law remedy. Certainly, such claim does not license the disgruntled gambler to engage in self-help. By seeking to deprive the deceased of possession of his winnings, the appellant has fully evinced the requisite larcenous intent.

In this context it must be emphasized that the allegation of a claim of right does no more than raise an affirmative defense to the crime of larceny (see Penal Law, § 155.15). However, this defense should not be given a broad interpretation and should not be extended to a prosecution for robbery. Thus, any alleged claim of right is entirely irrelevant when the larceny has been accomplished by the use of, or immediate threat of the use of, physical force.

"The peril to the victim and, therefore, to society is clearly greater when violence is used, or threatened to be immediately used, in the commission of a crime. The Legislature has apparently recognized this distinction in limiting the use of the affirmative defense that the property was taken 'under a claim of right made in good faith', by the plain terms of subdivision 1 of section 155.15 of the Penal Law, to 'larceny' and not robbery. We see no reason to expand the doctrine of self-help to allow it to be interposed as a defense by a person who has used actual or potential violence [citations omitted]" *(People v Banks,* 55 AD2d 795, 796). A consistent approach was taken by the Appellate Division, First Department, in affirming a robbery conviction on the ground that notwithstanding an alleged debt, the victim-debtor had a superior right of possession *(People v Richardson,* 55 AD2d 514).

A similar analysis was recently made by the Maryland Court of Special Appeals in its affirmance of a robbery conviction of an individual who forcibly retook money he had lost in a dice game *(Cates v State,* 21 Md App 363). Relying on a passage in Wharton's Criminal Law and Procedure (vol 2

[Anderson ed, 1957], § 563), the court stated that "capacity of the victim is immaterial and that it is essential only that he have possession, without regard to whether he has title, and even though that possession resulted from stealing the property" *(Cates v State, supra,* p 369). The Maryland court went on to hold that the key variable was the actual intent rather than the abstract intent premised in any supposed claim of right. "Disputed rights between individuals must be resolved by agreement or by the courts; not by stealth or force" *(Cates v State, supra,* p 372).

■■ Ultimately we are concerned with a question of policy. Although gambling is unlawful in New York, once an individual voluntarily enters a dice game and thereby assumes the risk of losing, that individual must be precluded from relying on the illegality of his own activity as a justification for violent self-help in recovering his losses. The civil law remedy contained in section 5-421 of the General Obligations Law is designed to discourage gambling by putting people on notice that they may be divested of their winnings. However, the availability of such remedy does not countenance self-help which involves the threat or actual use of force. For purposes of the Penal Law, the successful gambler who is possessed of his winnings, must be deemed the owner thereof, and any subsequent intent to deprive such owner of his winnings, no matter the motivation, constitutes larcenous intent.

We have considered the other arguments advanced on appeal, including those raised in the appellant's *pro se* brief, and find them to be without merit.

TITONE, J. P. (concurring). Mr. Justice RABIN is eminently correct when he states that the trial court's charge with respect to the defendant's affirmative defense was confusing and misleading. It not only failed to charge that the burden of the prosecution to prove the defendant's guilt beyond a reasonable doubt never shifts, but also compounded the error by implying that the prosecution's burden is somehow either diluted or minimized where an affirmative defense is imposed.

However, I do not subscribe to my colleague's second contention, namely, that the forcible retaking of one's gambling losses constitutes the crime of robbery, which, in this case, is the alleged crime upon which the subject felony murder indictment is premised. The crimes of robbery and larceny, at common law and under present New York law (Penal Law, §§ 155.05, 160.00), both require a felonious taking and carry-

ing away *of the property of another without the latter's consent.* The crime of robbery is distinguishable in that the taking is accomplished by force or violence, actual or constructive. In this State, as in most other American jurisdictions, the law is settled that an individual who wins money or other consideration from another in an illegal game of chance does not acquire title to the winnings *(Meech v Stoner,* 19 NY 26, 28; *People v Stedeker,* 175 NY 57, 62; *Ruckman v Pitcher,* 20 NY 9; *Davidson v State,* 200 Ark 495; *People v Rosen,* 11 Cal 2d 147; *State v Price,* 38 Idaho 149; *Sikes v Commonwealth,* 17 Ky L Rep 1353; *People v Henry,* 202 Mich 450). One who wagers with a gambler never parts with the title to his money *(People v Stedeker, supra,* p 62); the law affords no protection at all to a gambler *(Hofferman v Simmons,* 290 NY 449; *Bamman v Erickson,* 288 NY 133). A person may neither acquire nor vest himself with title by crime *(Flegenheimer v Brogan,* 284 NY 268).

Thus, consistent with the proposition that the winner in a gambling endeavor acquires no title to his illegally acquired gains, it has been generally but not universally held that a charge of larceny or robbery may not be sustained where one who had lost money or other property at gambling, compelled the return of his gambling losses by force or threats *(People v Rosen, supra; People v Rogan,* 1 Cal 2d 615; *People v Henry, supra; Davidson v State, supra;* contra *Cates v State,* 21 Md App 363).

I also disagree with the majority's argument that since section 5-421 of the General Obligations Law provides a civil remedy for recovery of gambling losses in excess of $25, the use of violent self-help to recover such losses somehow raises a presumption of a felonious intent on the part of the loser to steal the property of another. Such conclusion is a *non sequitur.* Firstly, it unrealistically presupposes that the loser, usually not schooled in the law, is aware that such a civil remedy exists. Secondly, the more logical conclusion would seem to be that the loser sought to reclaim, albeit by violent action, that which he believed belonged to him. Such a conclusion would be even more logical in a situation such as herein, where the defendant alleges that the winner prevailed in the illegal game because he used "crooked" or "loaded" dice (see *Murphy v State,* 133 Tex Crim 189; Ann. 77 ALR3d 1363, 1374-1375, 1378-1379).

Furthermore, and contrary to the position taken by the

majority, I do not believe the determination in *People v Banks* (55 AD2d 795) is controlling in this instance. In *Banks,* the forcible taking was committed by a creditor from his debtor. As succinctly noted by the Appellate Division, First Department, in *People v Richardson* (55 AD2d 514, 515), the debtor "had a superior right to possess the [money owed] * * * notwithstanding the alleged debt."

Thus, the argument advanced by the majority, that after the transfer of possession the gambling loss "assumes the status of a common debt, with the winner in the role of debtor and the loser as creditor", has no merit. Since the possession of the money by the winner is illegal and tainted from its inception, it cannot constitute what is referred to in Hechtman's Practice Commentary as "lawful possession of the moment" (McKinney's Cons Laws of NY, Book 39, Penal Law, § 155.00, pp 104-105). Indeed, the majority's concept is nowhere evidenced in the Debtor and Creditor Law of this State.

In taking the position that one is not guilty of robbery for forcibly retaking his gambling losses from the winner, I am not suggesting that the loser, as the majority intimates, has a right "to engage in self-help". There are other serious crimes for which such an individual can be charged, which carry severe penalties, such as assault in the first degree. Furthermore, since a homicide ensued in this instance, the defendant was also susceptible to being charged with common-law murder.

Generally, under the statutes or the common law, it is an essential element of larceny that the item taken and carried away be the property of another, that is, someone other than the taker must have, in the item, a general or special property right which is invaded by the trespass committed in the taking. It is not larceny for a person to take his own goods from one who has no legal right to withhold them from him, even though he commits a trespass in taking them (52A CJS, Larceny, § 13; cf. *People v Dye,* 134 Misc 689).

However, I do not contend that under no view of the facts in this case could it be found that the defendant did not commit the underlying crime of robbery by forcibly taking gambling moneys from the victim. In most jurisdictions which hold that forcible taking of one's own gambling losses from the winner does not constitute either larceny or robbery, it has also been held that if the loser compels the surrender of more money than he lost, he is guilty of larceny or robbery *(Jackson v*

*State,* 30 Ala App 468; *State v Hardin,* 99 Ariz 56; Ann. 77 ALR3d 1363, 1375-1378). In the instant case, there is disputed testimony both as to the amount won by the victim and the amount lost by the defendant. One witness testified that the victim won $300 and that the defendant was not even involved in the game. Another witness said that the victim won $700 and there was evidence that the defendant lost about $200 or $250.

Therefore, since questions of fact are present as to whether the defendant used or participated in the use of force to compel surrender by the victim of more money than he lost, I am of the opinion that, on the retrial, the jury should be charged, *inter alia,* that although it is not larceny or robbery for the loser in a gambling game to compel by force the return of the money he lost, if the loser compels the surrender of more than he lost, he is guilty of larceny and robbery (see *Gant v State,* 115 Ga 205; *Turner v State,* 177 Miss 272).

GULOTTA and MARGETT, JJ., concur with RABIN, J.; TITONE, J. P., concurs in the result, with an opinion.

Judgment of the Supreme Court, Kings County, rendered April 3, 1975 (the date on the clerk's extract is May 22, 1975), reversed, on the law, and new trial ordered.