# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2007-KA-01331-SCT

*ANTHONY CROFT*

*v.*

*STATE OF MISSISSIPPI*


| | |
|---|---|
| DATE OF JUDGMENT: | 06/06/2007 |
| TRIAL JUDGE: | HON. CHARLES E. WEBSTER |
| COURT FROM WHICH APPEALED: | BOLIVAR COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | MISSISSIPPI OFFICE OF INDIGENT APPEALS BY: BENJAMIN ALLEN SUBER |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: LISA LYNN BLOUNT |
| DISTRICT ATTORNEY: | LAURENCE Y. MELLEN |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/09/2008 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |


**BEFORE WALLER, P.J., EASLEY AND GRAVES, JJ.**

**EASLEY, JUSTICE, FOR THE COURT:**

¶1.     Anthony Croft was convicted on three of five counts of armed robbery in the Circuit Court of Bolivar County, Mississippi, and sentenced to twenty-five years for each count, said sentences to run concurrently. Croft timely filed a motion for judgment notwithstanding the verdict (JNOV), or in the alternative, a motion for a new trial. The trial court denied the post-trial motions. From that final judgment, Croft appeals.

## FACTS

¶2.     Croft testified that on September 15, 2005, he lost $175 shooting dice at Mac's Place, a small bar located in Mound Bayou where patrons go to drink beer, shoot pool, play dominos, and sometimes bet on sporting events. Croft said he believed that Larry McKnight, who operated the establishment, had been using bogus dice. Croft left the bar and went to his sister's house, where he got more money and a gun. Croft said he arrived back at Mac's Place in a vehicle with Randall James and Louise Fipps (Louise), Croft's aunt. Larry Hogan and Michael Warren, both of whom were indicted with Croft in this matter, followed in another vehicle.

¶3.     Croft entered the bar for the second time that evening and again started rolling dice. After losing $75 on a roll of "snake eyes," Croft said he confronted McKnight about the dice. McKnight pushed him in response, so Croft said he pulled out his gun with the intent of getting out of Mac's Place without any problems. Croft then demanded his money back from McKnight. Croft said at that point, James and Louise began grabbing money from the table, money which Croft stated was already there. Croft "took about $75 off the table," claiming it was his, and left Mac's Place with Louise, Hogan, James, and Warren.

¶4.     Croft testified that they dropped off James and Louise prior to being arrested outside his grandmother's house by the Mound Bayou police for armed robbery. It was uncontested that Croft had $174 on his person when arrested.

¶5.     The State put on eight eyewitnesses who each testified to a different version of events. Testimony conflicted as to whether people inside Mac's Place were playing dice games, dominos, or just standing around when the robbery occurred. The testimony, however, was consistent that Croft was not gambling at the time of the robbery.

2

¶6.     Kelvin Fipps, Croft's cousin and a nephew of Louise Fipps, testified he was outside Mac's Place at the time of the robbery. Looking through the window, he saw Croft holding a gun in one hand and a pool cue in the other. Kelvin said he heard Croft tell the people inside to throw their money on the table. He said he tried to get into the building to stop Croft, but Hogan was holding the door closed. Kelvin testified that as he kicked and banged on the door, Warren told him to "leave it alone, let him handle his business," referring to Croft.

¶7.     Robert Lee Fields also was outside Mac's Place at the time. Field's testimony corroborated Kelvin's testimony.

¶8.     Sylvester Fipps, Louise Fipps's son, was inside Mac's Place when Croft entered the establishment for the second time that evening. He testified that Croft walked into the bar, asked somebody for a beer, pulled out a gun and told everyone to get in the corner. Sylvester stated he had $80 of his own money on the table at the time Croft ordered Louise to gather it up with the rest of the money. The record, however, is unclear as to when and how Sylvester's money got on the table. Sylvester also indicated that Croft had been playing dice earlier, but was not playing at the time of the robbery.

¶9.     Larry McKnight testified that Croft walked into the bar, laid a pistol on the table, and asked Eddie Johnson to buy him a beer. Croft then picked up the pistol, along with a pool cue, and told everyone to get against the wall. According to McKnight, people were standing around a table playing dominos, not rolling dice. Croft ordered them to empty their pockets and to put their money on the table. McKnight placed approximately $285 on the table. At that point, there was a loud bang at the door where Hogan was standing guard. McKnight

3

said the noise diverted Croft's attention long enough for Eddie Johnson and others to retrieve their money from the table; McKnight did not make the attempt. Croft redirected his attention to the table and ordered Louise to pick up the money and bring it to him at the bar. Croft then left with James and Hogan.

¶10.    Eddie Johnson (also known as Big Eddie) testified that he was sitting next to the bar when Croft entered the building. He said no one was shooting dice, but some people were standing around playing dominos at the time. According to Johnson, Croft entered the bar, walked over and asked Johnson to buy him a beer. Johnson refused. Croft then pulled out a gun and said, "Well, Big Eddie, you think this here will get that beer?" Croft told Johnson to put his money on the table. Johnson took $600 out of his pocket and placed it on top of the table. Johnson stated that Croft ordered Louise to get the money off the table. Johnson said it appeared to him that Louise was trying to talk Croft out of what he was doing. While Louise was gathering the money, Johnson said someone kicked the door where Croft had his "guard" standing. The commotion distracted Croft; Johnson then grabbed his $600 from the table.

¶11.    Louise testified she walked inside Mac's Place, saw Croft, and asked him to buy her a beer. Croft agreed and the two walked toward the bar. Louise then observed Croft with a gun and heard him say, "It's is a stickup." Croft told her, "Get the money off the table and put it on the counter." Louise did what she was told. She testified that she left Mac's Place alone and walked home.

¶12.    Paulette Hunter testified she went in Mac's Place to use the restroom. She first heard Croft tell Hogan to lock the door, then noticed Croft with a gun in one hand and a pool stick

4

in the other. She knew it was a holdup when Croft "asked them to give him their money." Hunter saw Louise pick up the money and heard Croft tell James to take the money. Croft then went through the money and said, "I know there was some one hundred dollar bills in here somewhere. Where's the hundred dollar bills at?"

¶13. Livingston Jones, a bartender at Mac's Place, testified that Croft came into the bar, placed a gun on the table, and said "it's a stickup." Jones took $50 from his pocket, which he said belonged to the bar, and put it on the table. Jones said the $50 was from beer sales and would have been turned over to McKnight at the end of the night. Jones said Croft instructed Louise to the pick up the money and hand it to him. Croft took the money from her and left the building. Jones also testified he did not see anyone playing dice that evening.

¶14. The jury subsequently found Croft guilty of armed robbery of Sylvester Fipps, Larry McKnight, and Eddie Johnson. They found Croft not guilty of armed robbery as to Livingston Jones and Johnny Brown (Brown did not testify).

**DISCUSSION**

**I. WHETHER THE TRIAL COURT ERRED IN DENYING INVESTIGATOR JOE SMITH'S TESTIMONY.**

¶15. The standard of review for the admission or exclusion of evidence is abuse of discretion. *Brown v. State,* 969 So. 2d 855, 860 (Miss. 2007) (citing *Poole v. Avara,* 908 So. 2d 716, 721 (Miss. 2005)). "The relevancy and admissibility of evidence are largely within the discretion of the trial court and reversal may be had only where that discretion has been abused." *Johnston v. State*, 567 So. 2d 237, 238 (Miss. 1990) (citing *Hentz v. State,* 542 So. 2d 914, 917 (Miss. 1989); *Monk v. State,* 532 So. 2d 592, 599 (Miss. 1988)).

¶16. Croft contends the trial court erred by not allowing the testimony of Investigator Joe Smith, a narcotics investigator with the Bolivar County Sheriff's Department, who did not participate in the robbery investigation conducted by the Bolivar County police. Croft proffered Smith's testimony for the court's determination as to what parts would be admissible for his defense. Croft maintains that Smith would have testified that Mac's Place was being investigated for both drug and gambling activity, and that McKnight had served time in federal prison for a drug crime. Croft asserts this testimony would have supported his defense theory, which was as follows: McKnight was running a crooked game of dice the night of September 15, and because Croft had threatened to inform the police about illegal gaming at Mac's Place if McKnight did not return Croft's money, McKnight was biased and had an interest in testifying against Croft.

¶17. On proffer, Smith testified that Croft approached him shortly after Croft's arrest for the armed robbery with information regarding drug activity at Mac's Place. Smith first put Croft in contact with an agent for the Drug Enforcement Agency, but nothing transpired from that meeting. Smith thereafter initiated his own drug investigation into Mac's Place. At the time of Croft's trial, Smith indicated he was still gathering intelligence and information about drug activity at the establishment. Smith stated he had no knowledge concerning illegal gambling activity at the establishment. Finally, when asked whether he knew if McKnight had served time in federal prison for drugs, Smith said he thought he heard that McKnight had, but was not sure.

6

¶18.   The trial court ruled Smith's testimony inadmissible under Mississippi Rules of Evidence 608 and 609.[1]   The trial court determined that Smith had insufficient knowledge pertaining either to McKnight's prior federal conviction or to illegal gambling activity at the establishment.   The trial court also ruled that Smith's ongoing drug investigation was irrelevant. The trial court ruled, however, that because gambling may have been involved on the night of the robbery, Croft would be permitted to probe the issue further during his cross-examination of the State's witnesses.   Croft also would be permitted to test the veracity of their testimony through inquiry with regard to any arrests made for illegal gambling, if such arrests were contemporaneous with the robbery matter at hand.   But Croft would not be permitted to introduce Smith's testimony as extrinsic evidence for the purpose of impeaching the State's witnesses.

¶19.   Croft argues the trial court failed to consider Mississippi Rule of Evidence 616, which provides for the admission of evidence for the purpose of showing the bias, prejudice, or interest of a witness.  *See* Miss. R. Evid. 616.   For support, Croft relies on ***McLemore v. State***, wherein this Court reversed an armed-robbery conviction, inter alia, on the ground that the defendant was not permitted to testify on direct examination to the bias and prejudice of his arresting officers.  *See **McLemore v. State***, 669 So. 2d 19, 25 (Miss. 1996) (five-four decision) (Smith, J., concurring in part and dissenting in part).[2]   We are not persuaded.

---

[1]   Rule 608 covers evidence regarding the character and conduct of a witness; Rule 609 pertains to prior convictions for purposes of impeachment.  *See* Miss. R. Evid. 608 and 609.

[2]   McLemore's attorney did not try to elicit a showing of prejudice during the defense's cross-examination of the arresting officers during the State's case-in-chief, instead, counsel waited until McLemore testified on direct-examination; this troubled the dissenters.

7

¶20.    In *McLemore*, following McLemore's arrest for the robbery at issue in that case, his arresting officers also questioned him about a murder that had taken place near the location where McLemore was alleged to have committed the robbery. *Id.* at 23-24. It was later determined, however, that the murder had been committed while McLemore was in custody. *Id.* The majority found this information relevant and material to the central issue in the case. *Id.* at 25. The majority reasoned that because the officers had wrongly suspected McLemore's involvement in an unrelated murder while still investigating him for the robbery matter, their suspicion could have had an adverse impact on their on going robbery investigation.[3] *Id.* Therefore, the majority held that McLemore should have been allowed to testify about the alleged possible bias or prejudice on the part of the investigating officers. *Id.* at 27.

¶21.    *McLemore*, however, provides no solace for Croft's argument. Unlike *McLemore*, there is no doubt here that Smith's proffered testimony revealed nothing other than a collateral matter. As this Court has long held, a matter is collateral if it is not "one embodying a fact substantive in its nature and relevant to the issue made in the case." *Lee v. State*, 944 So. 2d 35, 43 (Miss. 2006) (quoting *Williams v. State*, 73 Miss. 820, 824, 19 So. 826, 827 (1896)). And it is "error to allow a witness to be contradicted on an immaterial

---

*See McLemore*, 669 So. 2d at 28 (Smith, J., dissenting).

[3] Notably, what also concerned the dissenters was the fact that the officers who had questioned McLemore about the murder were the ones who had determined that McLemore was not involved, and had then so advised McLemore upon their discovery. *See McLemore*, 669 So. 2d at 28. (Smith, J., dissenting) ("[I]t would be inconceivable that if officers suspected McLemore of committing another crime that they would not have questioned him about it").

(or collateral) matter." ***Johnson v. State***, 655 So. 2d 37, 41 (Miss. 1995) (quoting ***Price v.***

***Simpson,*** 205 So. 2d 642, 643 (Miss. 1968) (footnote omitted)).

¶22.    The trial court essentially found Smith's ongoing drug investigation to be a matter

wholly unrelated and immaterial to any of the issues likely to be addressed in the State's case

against Croft.  The record supports this finding.  Not only did the drug investigation begin

after the alleged armed robbery, but there was no showing whatsoever that McKnight knew

anything about it.  The fact that Smith was conducting a drug investigation simply had no

substantive bearing on the relevant attendant circumstances (*res gestae*) surrounding the

night Croft was alleged to have committed the armed robbery.  Injecting it into the case

would have served no purpose other than to unfairly prejudice the State's case by confusing

the jury with inconclusive information that one of the State's witnesses was being

investigated for drug activity.  Our trial courts have the responsibility, within judicial

discretion, to confine testimony to the issues before them.  ***Hannah v. State***, 336 So. 2d

1317, 1321 (Miss. 1976).

¶23.    Further, Smith's testimony also revealed that he had no knowledge concerning

gambling activity at the establishment; nor did he know for sure whether McKnight had

served time in federal prison.[4]  His testimony therefore offered no impeachment value, and

established no substantive evidence regarding bias, prejudice, or motive on the part of

McKnight.  The trial court correctly excluded it.  Croft's argument is without merit.

---

[4] For the sake of thoroughness, McKnight testified that he had served time in federal prison for drug trafficking.  He also testified that he was charged with illegal gambling shortly after the alleged armed-robbery incident.

## II. WHETHER THE TRIAL COURT ERRED IN DENYING CROFT'S MOTION FOR DIRECTED VERDICT AND JNOV.

¶24. In a criminal proceeding, motions for a directed verdict and judgment notwithstanding the verdict (JNOV) challenge the legal sufficiency of the evidence supporting the guilty verdict. *Randolph v. State*, 852 So. 2d 547, 554 (Miss. 2002) (citing *McClain v. State,* 625 So. 2d 774, 778 (Miss. 1993)). The standards of review for a denial of directed verdict and JNOV are identical. *Coleman v. State*, 697 So. 2d 777, 787 (Miss. 1997). Reversal can occur only when, after viewing all the evidence in the light most favorable to the verdict, one or more of the elements of the charged offense is such that "reasonable and fair-minded jurors could only find the accused not guilty." *Wetz v. State*, 503 So. 2d 803, 808 (Miss. 1987) (citing *Harveston v. State,* 493 So. 2d 365, 370 (Miss. 1986); *Fisher v. State,* 481 So. 2d 203, 212 (Miss. 1985)). Because each requires consideration of the evidence before the court when made, this Court properly reviews the ruling on the last occasion the challenge was made in the trial court. *McClain*, 625 So. 2d at 778 (citing *Wetz*, 503 So. 2d at 808). This occurred when the trial court overruled Croft's motion for JNOV.

¶25. Armed robbery is defined by Mississippi Code Annotated Section 97-3-79 (Rev. 2006) which provides in part:

> Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery.

¶26. The elements of robbery are: "(1) felonious intent, (2) force or putting in fear as a means of effectuating the intent, and (3) by that means taking and carrying away the property of another from his person or in his presence." *Walker v. State,* 913 So. 2d 198, 223 (Miss.

2005) (quoting *Caldwell v. State,* 481 So. 2d 850, 853 (Miss. 1985)). Croft claims the State failed to prove the first element, felonious intent.

¶27. Croft avers he did not have the intent to take money from anyone at Mac's Place, but intended only to recover his own money, which he alleges was stolen from him by McKnight via the crooked dice game. Croft maintains that he did not direct his conversation toward anyone but McKnight, and never directed anyone to put money on the table. Croft claims that he pulled the gun when McKnight pushed him following his accusation that McKnight was cheating, and kept the gun pulled to get out of Mac's Place safely. Croft therefore argues the element of intent was not met and that reasonable and fair-minded jurors should have found him not guilty.

¶28. Robbery is a specific-intent crime; as such, the State is required to prove that the defendant took the personal property of another with the intent to permanently deprive that person of his property. *Downs v. State,* 962 So. 2d 1255, 1259 (Miss. 2007). Thus, felonious intent means the intent to steal (*animus furandi*). *Thomas v. State*, 278 So. 2d 469, 471 (Miss. 1973). The issue of felonious intent is one of fact, and therefore falls within the exclusive province of the jury. *Williams v. State,* 317 So. 2d 425, 427 (Miss. 1975) (quoting 67 Am. Jur. 2d *Robbery* § 61, at 63 (1973)).

¶29. There is outside authority that a loser in a unlawful gambling transaction who, under a bona fide claim of right, forcibly retakes his gambling losses from the winner is not guilty

11

of robbery.[5]  Those jurisdictions adopting this view do so under the legal philosophy that such a belief negates the requisite *animus furandi* or intent to steal.

¶30.    This Court has not decided "whether or not, in an [unlawful] game of chance, an alleged robber, taking only money he had lost in such unlawful game, would be guilty of robbery." ***Jones v. State,*** 216 Miss. 186, 189; 62 So. 2d 217 (1953) (citing ***Turner v. State,*** 177 Miss. 272, 279; 171 So. 21, 23 (1936)).  ***Jones*** and ***Turner***, not cited by either party in this matter, are the only two cases on point.  In both opinions, the Court declined to answer the question because the State's evidence sufficiently demonstrated that the defendant in each instance had taken more from the victims than the defendant had claimed was lost.  Notably however, the ***Turner*** Court acknowledged that the weight of the authority from other jurisdictions was of the view that a person taking only the money that he had just lost at an unlawful game of chance, even through force or threat, would be guilty of trespass, not

---

    [5] See 4 C. Torcia, Wharton's Criminal Law § 456 (15th ed. 1996) *citing* ***State v. Hardin,*** 99 Ariz. 56, 406 P. 2d 406 (1965); ***Davidson v. State,*** 200 Ark. 495, 139 S.W. 2d 409 (Ark. 1940); ***People v. Rosen,*** 11 Cal. 2d 147, 78 P. 2d 727, 116 A.L.R. 991 (1938); ***State v. Price,*** 38 Idaho 149, 219 P. 1049, 35 A.L.R. 1458 (1923); ***People v. Henry,*** 202 Mich. 450, 168 N.W. 534 (1918); ***Carr v. State,*** 55 Tex. Crim. 352, 116 S.W. 591 (1909); ***People v. Hughes,*** 11 Utah 100, 39 P. 492 (1895).  *But see* ***Cates v. State,*** 21 Md. App. 363, 320 A. 2d 75, 77 A.L.R. 3d 1353 (1974); ***People v. Coates,*** 64 A.D.2d 1, 407 N.Y.S. 2d 866 (N.Y. App. Div. 2d Dep't 1978) (felony-murder conviction based on forcible retaking of gambling losses as robbery sustained); ***People v. Skinner,*** 102 A.D. 2d 899, 477 N.Y.S. 2d 69 (N.Y. App. Div. 2d Dep't 1984) (evidence that defendant was guilty of robbery in first degree was sufficient, where defendant, losing in craps game, attempted to steal proceeds of side bet won by victim, and took all of victim's money after victim was shot by another man to whom defendant had handed rifle which defendant brought to game); ***Commonwealth v. Sleighter,*** 495 Pa. 262, 433 A. 2d 469 (1981) (Defendant who with accomplice beat victim to death in effort to collect gambling debt, was properly adjudicated guilty of second-degree murder under felony-murder doctrine, despite claim that mental element was not present since defendant took property from victim under "claim of right"; defendant could not justify robbery to collect illegal debt)).

robbery. *See Turner*, 171 So. at 23 (citing *State v. Price,* 38 Idaho 149, 219 P. 1049, 35 A.L.R. 1458 (1923) (and annotations thereto)).

¶31. In *Williams*, *supra*, we noted that because the issue of felonious intent is one of fact, a jury may find, if the facts justify it, that a defendant's expressed intent to collect a debt, or retake money lost in an illegal game, was a mere pretext resorted to as a cover for an attempt to steal. *Williams,* 317 So. 2d at 427 (citation omitted). Shortly preceding *Williams,* we reminded both the bench and bar in *Thomas*, *supra*, "that specific intent to steal must be shown by the testimony in robbery cases." *Thomas,* 278 So. 2d at 472. In the case sub judice, given the testimony of all the State's witnesses, the State complied with what this Court stated in *Thomas,* and has demonstrated specific intent. Moreover, pursuant to *Jones* and *Turner,* the evidence in this case stands against the defendant's contention that the only money he took was money he had lost. The record shows that Croft entered the establishment, drew a pistol, ordered the three individuals to relinquish possessive control of their money, and with the aid and abetment of others, assumed control over it.

¶32. McKnight's testimony that Croft took $285 from his person was sufficient evidence for the jury to weigh and consider against Croft's claim that he took only $75. Even when taking into consideration the initial $175 that Croft claimed he had lost earlier that evening, McKnight's testimony adequately supports the conclusion reached by the jury. As the State points out, the $75 that Croft claims he took because it belonged to him, when added with the $175, equals less than $285. Thus, the evidence quells any concern that Croft was in danger of being convicted on a legal impossibility. *See generally Jones,* 62 So. 2d 217; *and Turner,* 171 So. 21.

13

¶33. Johnson's testimony, evincing that he got his $600 back from the table, does not negate Croft's guilt of armed robbery. Our armed robbery statute includes "attempt," therefore a conviction based on armed robbery does not require that there be an actual taking.[6] *See Cooper v. State,* 386 So. 2d 1115 (Miss. 1980) (citing to *Hall v. State,* 148 So. 793, which upheld an armed-robbery conviction though there was no actual taking or asportation of the owner's property). Though the State did not specifically reference Section 97-3-79 in the indictment, the armed-robbery charge nonetheless was "substantially and certainly" in language equivalent in meaning to the language of the armed-robbery statute. *Norwood v. State,* 258 So. 2d 756, 760 (Miss. 1972).[7] Therefore, the State needed only to prove that Croft attempted to rob Johnson. The elements of an attempted crime include: "(1) an intent to commit a particular crime; (2) a direct ineffectual act done toward its commission; and (3) the failure to consummate its commission." *Bucklew v. State,* 206 So. 2d 200, 202 (Miss. 1968) (citing 22 C.J.S. Criminal Law § 75(1) (1961)). The mere intention

---

[6] Mississippi Code Annotated Section 97-3-79 (Rev. 2006) states in pertinent part:

Every person who shall feloniously take or attempt to take from the person or from the presence the personal property of another and against his will by violence to his person or by putting such person in fear of immediate injury to his person by the exhibition of a deadly weapon shall be guilty of robbery[.]

[7] The indictment pertaining to Eddie Johnson reads in pertinent parts as follows:

That Anthony Croft, Larry Hogan a/k/a Larry Jackson, & Michael Warren, . . . individually or while aiding and abetting and/or acting in concert with each other, did unlawfully, wilfully, and feloniously, with intent to steal, take good and lawful money . . . , of the property of Eddie Johnson, from the person or from the presence of, and against the will of Eddie Johnson by putting him in fear of immediate injury to his person by the exhibition of a pistol, a deadly weapon.

14

to commit a crime is not punishable; "the intention must therefore be coupled with an overt act." *Id.* (citation omitted). To prove an overt act, "the act must be such as will apparently result, in the usual and natural course of events if not hindered by extraneous causes, in the commission of the crime itself, and an act apparently adapted to produce the intended result is sufficient to constitute the overt act essential to an attempt." *Id.*; *see also State v. Lindsey,* 202 Miss. 896, 32 So. 2d 876 (1947); *Dill v. State,* 149 Miss. 167, 115 So. 203 (1928); *State v. Fitzgerald,* 151 Miss. 229, 117 So. 517 (1928); *State v. Wade,* 102 Miss. 711, 59 So. 880 (1912); *Stokes v. State,* 92 Miss. 415, 46 So. 627 (1908); *Cunningham v. State*, 49 Miss. 685 (1874). Johnson placing the $600 from his pocket onto the table, after being ordered by Croft–with gun in hand–to do so, certainly constituted an "overt act." And when coupled with the State's proof that Croft intended to steal the $600, the elements for "attempt" were met.

¶34. As to Sylvester, who unlike Johnson did not get his money back, the record does not indicate whether he placed his $80 on the table at the direction of Croft, or whether it was there already when Croft began issuing orders. Assuming the latter, which benefits Croft's case the most, there was a taking when Louise and/or James, by order of Croft, retrieved it from the table. For each indictment in this case, the State included an "aiding-and-abetting" charge. The trial court gave the jury the aiding-and-abetting instruction identical to the one adopted by this Court in *Milano v. State,* 790 So. 2d 179 (Miss. 2001). *See id.* at 185 (adopting the Fifth Circuit's Pattern Jury Instruction on Aiding and Abetting). Therefore, as long as the State proved guilt on every element of the armed-robbery offense, the fact that Croft did not actually remove the money from the table, or even receive any of it, is of no

15

matter; Croft still could be found guilty of armed robbery through the act of aiding and abetting others. The act of robbery, it has been said, "is in its final analysis a forcible larceny from the person of another" (though, as noted *supra*, a conviction for armed robbery does not require asportation). *See Thomas v. State,* 278 So. 2d at 471 (citing 52A C.J.S. Larceny § 1 (2) at 396 (1968)). It "is well settled in this State that it is not necessary to constitute larceny that the taking [] be *lucri causa.*" *Delk v. State,* 64 Miss. 77, 79, 1 So. 9 (1886).

¶35. In the case against Croft, the State's evidence sufficiently shows that Croft, himself, or through the aid and abetment of others, took more than what he claimed rightfully belonged to him. *Jones v. State,* 62 So. 2d 217; *Turner v. State,* 171 So. 21. And, by the State's compliance with both *Williams* and *Thomas, supra*, the jury was not bound to accept Croft's version that the money he took belonged to him.

## CONCLUSION

¶36. The judgment of the Circuit Court of Bolivar County is affirmed.

**¶37. COUNT I: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE (25) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT IV: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE (25) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. COUNT V: CONVICTION OF ARMED ROBBERY AND SENTENCE OF TWENTY-FIVE (25) YEARS, WITH CONDITIONS, IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED. SENTENCE IN COUNT I SHALL RUN CONSECUTIVE TO ANY AND ALL SENTENCES PREVIOUSLY IMPOSED. SENTENCES IN COUNTS IV AND V SHALL RUN CONCURRENTLY WITH THE SENTENCE IMPOSED IN COUNT I.**

**SMITH, C.J., WALLER AND DIAZ, P.JJ., CARLSON, GRAVES, DICKINSON, RANDOLPH AND LAMAR, JJ., CONCUR.**