*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

   Plaintiff-Appellee,

UNPUBLISHED
June 18, 2020

v

JONATHON JOSEPH BUGAJSKI,

   Defendant-Appellant.

No. 347475
Chippewa Circuit Court
LC No. 17-003334-FH

Before: BORRELLO, P.J., and RONAYNE KRAUSE and RIORDAN, JJ.

PER CURIAM.

Defendant appeals by right his jury-trial conviction of being a prisoner in possession of contraband, MCL 800.281(4). He was sentenced to serve 3 to 20 years' imprisonment as a fourth-offense habitual offender, MCL 769.12. For the reasons set forth in this opinion, we vacate defendant's conviction and remand this matter for a new trial.

## I. BACKGROUND

Defendant's conviction stems from an incident that occurred on July 6, 2016, while defendant was incarcerated. On that date, a corrections officer searched defendant and allegedly found Suboxone on defendant's person. At trial, defendant represented himself. He stipulated that he was a prisoner on July 6, 2016, and that the substance found by the corrections officer was Suboxone. However, defendant had claimed that the Suboxone was given to him without his knowledge by another inmate in addition to what defendant thought was an antidepressant. Standby counsel was present during the trial. Defendant was convicted and sentenced as previously noted. Defendant now appeals.

## II. WAIVER OF COUNSEL

Defendant's first appellate issue involves his decision to represent himself at trial and the validity of his waiver of his right to counsel.

At a pretrial hearing, the trial court granted defendant's request to represent himself at trial. The relevant discussion occurred on the record as follows:

*The Court*: Okay, your attorney's indicated, Mr. Bugajksi that there's a statement or a motion you want to make. Is that correct?

*The Defendant*: Yes.

*The Court*: Okay.

*The Defendant*: I wish to represent myself.

*The Court*: Okay.

*The Court*: [Prosecutor] or [defense counsel], is there—

[*Prosecutor*]: I don't take any stance.

*The Court*: [Defense counsel], any—

[*Defense Counsel*]: Your Honor, I had—talking to Mr. Bugajski about this at length, he has indicated to me that he would like to represent himself because he feels that he would best serve his interest. We talked about the pros and cons about it. I advised him of the fact that he would be held to the same standard as an attorney moving forward at trial having to know all the areas of the law. He understands that, and he still wants to maintain his Sixth Amendment Right to—it's not exactly a right, but he's like [sic] to exercise his ability to represent himself.

*The Court*: Okay.

*The Court*: Is that correct, Mr. Bugajksi?

*The Defendant*: Yes.

*The Court*: Okay. What I'm going to do then, Mr. Bugajski is this, I've done it in other matters. I'm going to keep [defense counsel] on as standby counsel in this particular matter. I will allow you to represent yourself, Mr. Bugajski as long as we can keep some decorum and professional courtesy between yourself and [the prosecutor] and the proper filings are noticed.

What I'd like you to do, Mr. Bugajski is if you're filing motions or want to make a motion to the court, please send the pleading and make sure they're legible to [defense counsel] who will distribute them. So, she can serve them because you have to have them served properly. So, please send them to the Public Defender's Office.

You can articulate and comment on them yourself when you're here in court. You can represent yourself. But for proof of service purposes, please send those motions to [defense counsel] who will distribute them. As long as we keep some professional decorum amongst ourselves I have no problem with you doing that, okay?

*The Defendant*: I understand.

*The Court*: Okay, and so far so good. I will let you do that. [Defense counsel] will be standby counsel, and she can assist you if you have questions in that regard. But by and large, Mr. Bugajski, any voir dire if this goes to trial or any questions of the witnesses or any commentary you're going to be making on behalf of yourself. You will have the opportunity to question those witnesses and do your own voir dire, do you understand that?

*The Defendant*: Yes.

*The Court*: Okay, all right. Well, again as long as we keep the proper decorum, then we have no problem with that. So, any motions we just send them to [defense counsel, and she'll disburse them. I'm going to treat this as a pretrial, Mr. Bugajski. I'm going to provide a copy of this pretrial order to [defense counsel] who will, in turn, send it to you. They'll have date specific in there for motions, pleadings, and that sort of thing. Please, pay attention to those dates if you want to anticipate filing motions, okay?

*The Defendant*: Okay.

Defendant proceeded to represent himself at his trial with standby counsel present.

On appeal, defendant now argues that the trial court committed structural error requiring automatic reversal when the trial court failed to substantially comply with the requirements of *People v Anderson*, 398 Mich 361; 247 NW2d 857 (1976), and MCR 6.005(D)(1) to ensure that he knowingly, intelligently, and voluntarily waived the assistance of counsel before the court permitted defendant to represent himself at trial, thereby denying defendant his right to counsel under the federal and state constitutions.

## A. STANDARD OF REVIEW

This Court reviews de novo as a question of law whether a defendant's waiver of the right to counsel was knowing, intelligent, and voluntary, but we review for clear error the trial court's factual findings with respect to the knowing, intelligent, and voluntary nature of the waiver. *People v Williams*, 470 Mich 634, 640; 683 NW2d 597 (2004).

In this case, however, defendant did not object to the adequacy of the trial court's colloquy with him regarding his request to represent himself or the adequacy of his waiver of counsel, nor did defendant ever assert that his decision to represent himself and concurrent waiver of counsel was not knowingly, intelligently, and voluntarily made or that he was somehow forced to represent himself or actually prevented from receiving the assistance of counsel. Defendant affirmatively indicated to the trial court that he desired to represent himself at trial. Accordingly, although we acknowledge that a claim alleging the complete deprivation of counsel at a critical stage of a criminal proceeding implicates an error that is considered structural, see, e.g., *Gideon v Wainwright*, 372 US 335; 83 S Ct 792; 9 L Ed 2d 799 (1963); *People v Russell*, 471 Mich 182, 194 n 29; 684 NW2d 745 (2004), defendant has failed under these circumstances to preserve his challenge to the validity of his waiver for appellate review, *People v Cain*, 498 Mich 108, 114-

115; 869 NW2d 829 (2015) (explaining that an issue is unpreserved for appeal if the appellant failed to timely raise the issue in the trial court), and our review is nonetheless limited to plain error affecting substantial rights, *Cain*, 498 Mich at 117 n 4 (explaining that unpreserved claims of structural error are still subject to plain-error review).[1]

"To avoid forfeiture under the plain error rule, three requirements must be met: 1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights." *People v Carines*, 460 Mich 750, 763; 597 NW2d 130 (1999). "[O]nce a defendant satisfies these three requirements, an appellate court must exercise its discretion in deciding whether to reverse." *Id*. "Reversal is warranted only when the plain, forfeited error resulted in the conviction of an actually innocent defendant or when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. at 763-764 (quotation marks and citation omitted; alteration in original).

## B.  LEGAL FRAMEWORK

The right to counsel is protected by both the federal and state constitution.  US Const, Am VI, XIV; Const 1963, art 1, § 20; *Williams*, 470 Mich at 641.  The right of self-representation, however, is also constitutionally protected by the Sixth and Fourteenth Amendments, see *Faretta v California*, 422 US 806, 818-821; 95 S Ct 2525; 45 L Ed 2d 562 (1975), as well as by the Michigan Constitution, Const 1963, art. 1, § 13; *Williams*, 470 Mich. at 642.[2]  Hence, a criminal defendant possesses "a constitutional right to proceed without counsel when he voluntarily and intelligently elects to do so," *Faretta*, 422 US at 807, but exercising this right necessarily requires the defendant to give up "many of the traditional benefits associated with the right to counsel," *id*. at 835.  Accordingly, "in order to represent himself, the accused must 'knowingly and intelligently' forgo those relinquished benefits." *Id*. at 835.  The *Faretta* Court explained:

"Although a defendant need not himself have the skill and experience of a lawyer in order competently and intelligently to choose self-representation, he should be made aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open." [*Id*. (quotation marks and citation omitted).]

In accordance with *Faretta*, our Supreme Court has set forth three requirements to be met before a trial court may accept a criminal defendant's waiver of the right to counsel and grant the defendant's request to exercise the right to self-representation: (1) the defendant's request to

---

[1] We make this observation while also noting the absurdity of how a defendant would typically preserve this issue in similar cases.  In order to preserve this issue for appellate review, a defendant has to (1) assert his right to represent himself, and following the trial court allowing him to do so, (2) immediately thereafter object to the very ruling he just requested.

[2] In Michigan, these rights are also protected by statute.  MCL 763.1 ("On the trial of every indictment or other criminal accusation, the party accused shall be allowed to be heard by counsel and may defend himself, and he shall have a right to produce witnesses and proofs in his favor, and meet the witnesses who are produced against him face to face.").

proceed pro se "must be unequivocal"; (2) "the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily"; and (3) "the trial judge [must] determine that the defendant's acting as his own counsel will not disrupt, unduly inconvenience and burden the court and the administration of the court's business." *Anderson*, 398 Mich at 367-368.

In addition to ensuring that the *Anderson* requirements have been satisfied when a defendant requests to proceed pro se, Michigan trial courts also "must satisfy the requirements of MCR 6.005(D)." *Russell*, 471 Mich at 190. MCR 6.005(D) provides in pertinent part as follows:

> (D) . . . The court may not permit the defendant to make an initial waiver of the right to be represented by a lawyer without first
>
> (1) advising the defendant of the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation, and
>
> (2) offering the defendant the opportunity to consult with a retained lawyer or, if the defendant is indigent, the opportunity to consult with an appointed lawyer.

Our Supreme Court has held that the standard by which a trial court's adherence to the above requirements in *Anderson* and MCR 6.005(D) is one of "substantial compliance." *Russell*, 471 Mich at 191. "[I]f the trial court fails to substantially comply with the requirements in *Anderson* and the court rule, then the defendant has not effectively waived his Sixth Amendment right to the assistance of counsel." *Id*. at 191-192. Our Supreme Court has explained the substantial compliance standard as follows:

> Substantial compliance requires that the court discuss the substance of both *Anderson* and MCR 6.005(D) in a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures. The nonformalistic nature of a substantial compliance rule affords the protection of a strict compliance rule with far less of the problems associated with requiring courts to engage in a word-for-word litany approach. Further, we believe this standard protects the vital constitutional rights involved while avoiding the unjustified manipulation which can otherwise throw a real but unnecessary burden on the criminal justice system.
>
> Completion of these judicial procedures allows the court to consider a request to proceed in propria persona. *If a judge is uncertain regarding whether any of the waiver procedures are met, he should deny the defendant's request to proceed in propria persona, noting the reasons for the denial on the record. The defendant should then continue to be represented by retained or appointed counsel*, unless the judge determines substitute counsel is appropriate. [*Id*. at 191 (quotation marks and citation omitted).]

## C. ANALYSIS

On appeal, defendant concedes that the trial court complied with the first and third *Anderson* requirements, but he argues that he is entitled to appellate relief because the trial court failed to comply with the second *Anderson* requirement and MCR 6.005(D).

As previously stated, the second *Anderson* requirement provides that "the trial court must determine whether defendant is asserting his right knowingly, intelligently and voluntarily." *Anderson*, 398 Mich at 368. Regarding this requirement, the *Anderson* Court further explained as follows:

> The trial court must make the Pro se defendant aware of the dangers and disadvantages of self-representation, so that the record will establish that he knows what he is doing and his choice is made with eyes open. Defendant's competence is a pertinent consideration in making this determination. But his competence does not refer to legal skills, [f]or his technical legal knowledge, as such, was not relevant to an assessment of his knowing exercise of the right to defend himself. [*Id*. (quotation marks and citations omitted).]

In this case, review of the record reveals that the trial court failed to engage in such a discussion with defendant. According to the record before us, the trial court did not advise defendant about the dangers and disadvantages of self-representation, did not seek to evaluate defendant's competence, and did not make any findings about whether defendant made a knowing, intelligent, and voluntary waiver of his right to counsel before the trial court granted defendant's request to represent himself. With respect to MCR 6.005(D), although it is stated on the record that defendant had an opportunity to consult with appointed counsel as required by MCR 6.005(D)(2), the trial court granted defendant's request to represent himself without advising defendant in accordance with MCR 6.005(D)(1) regarding "the charge, the maximum possible prison sentence for the offense, any mandatory minimum sentence required by law, and the risk involved in self-representation."

Instead of following the standards set forth by our Supreme Court for accepting a waiver of the right to counsel, the trial court in this case was seemingly more focused on other factors, such as whether defendant could write legibly. The record of defendant's purported waiver, which we have quoted above in its entirety, does not permit us to conclude that the trial court substantially complied with the second *Anderson* requirement and MCR 6.005(D)(1). Accordingly, there is no finding provided by the trial court on which this Court could make a finding that defendant made a knowing, intelligent, and voluntary waiver of his right to counsel. *Russell*, 471 Mich at 191. The trial court's failure to follow the requirements of *Anderson* and MCR 6.005(D)(1) and to ensure on the record that defendant's waiver of his right to counsel was knowing, intelligent, and voluntary constitutes error that was plain. *Russell*, 471 Mich at 190-192; *Carines*, 460 Mich at 763.

The prosecution argues that defense counsel's representation that she had discussed the "pros and cons" of self-representation with defendant—a discussion of which we have no record— was an adequate substitute for the trial court's colloquy on the record to ensure that defendant's waiver of the right to counsel was knowing, intelligent, and voluntary. However, the prosecution failed to produce any precedent for this Court to adopt such a procedure. Rather, it is apparent that such a procedure has not been supported or adopted by any decision in our State, and Supreme

Court precedent bars us from doing so in this matter. See *Anderson*, 398 Mich at 368 (requiring the trial court to make a record evidencing a knowing, intelligent, and voluntary waiver of the defendant's right to counsel and assertion of the right to self-representation); *Russell*, 471 Mich at 191 (recognizing that the substantial compliance standard requires the trial court to conduct "a short colloquy with the defendant, and make an express finding that the defendant fully understands, recognizes, and agrees to abide by the waiver of counsel procedures.") (quotation marks and citation omitted).

Defendant argues that because the trial court failed to properly conduct a valid waiver inquiry before granting defendant's request to represent himself at trial, the trial court completely deprived defendant of the right to counsel at a critical stage and a structural error requiring automatic reversal occurred. While we recognize wading the difficult waters of precedent on unpreserved claims of structural error, from both the United States Supreme Court and our Supreme Court,[3] we conclude our Supreme Court has held that unpreserved claims of structural error are still subject to plain-error review. *Cain*, 498 Mich at 117 n 4. However, we also recognize our Supreme Court has indicated that an unpreserved claim of structural error is sufficient in itself to satisfy the third *Carines* prong regarding prejudice, see e.g., *Vaughn*, 491 Mich at 666 ("While the Supreme Court of the United States has specifically reserved judgment on whether an unpreserved structural error automatically affects a defendant's substantial rights, this Court's . . . caselaw suggests that a plain structural error satisfies the third *Carines* prong.") (citations omitted). Hence, once a defendant has satisfied the first three *Carines* prongs--- (1) error must have occurred, 2) the error was plain, i.e., clear or obvious, 3) and the plain error affected substantial rights. *People v Carines*, 460 Mich at 763---an appellate court must exercise its discretion in deciding whether to reverse. *Id*.

That discretion constitutes the fourth *Carines* prong, wherein this Court is tasked to determine whether reversal is warranted. *Carines*, 460 Mich at 763-764. In applying the fourth prong, reversal is warranted "when an error seriously affect[ed] the fairness, integrity or public reputation of judicial proceedings' independent of the defendant's innocence." *Id*. (quotation marks and citation omitted; alteration in original).[4]

To make this determination, we must first look to the purpose of the right at issue. In this case, the right involved waiver of defendant's constitutional right to counsel. See *Vaughn*, 491 Mich at 666-669 (examining, with respect to an unpreserved claim of structural error, the purposes and goals of the right at issue to determine whether the structural error seriously affected the fairness, integrity or public reputation of judicial proceedings under the fourth prong of the *Carines* test).

---

[3] For example, see *People v Vaughn*, 491 Mich 642, 655, n.42; 821 NW2d 288 (2012).

[4] Reversal is also warranted if "the plain, forfeited error resulted in the conviction of an actually innocent defendant." *Carines*, 460 Mich at 763. Defendant has not argued that his is actually innocent, accordingly we focus on the second means of satisfying the fourth *Carines* prong that considers the affect on the fairness, integrity, or public reputation of judicial proceedings.

-7-

"The purpose of the constitutional guaranty of a right to counsel is to protect an accused from conviction resulting from his own ignorance of his legal and constitutional rights, and the guaranty would be nullified by a determination that an accused's ignorant failure to claim his rights removes the protection of the Constitution." *Johnson v Zerbst*, 304 US 458, 465; 58 S Ct 1019; 82 L Ed 1461 (1938). Moreover,

> The constitutional right of an accused to be represented by counsel invokes, of itself, the protection of a trial court, in which the accused—whose life or liberty is at stake—is without counsel. *This protecting duty imposes the serious and weighty responsibility upon the trial judge of determining whether there is an intelligent and competent waiver by the accused*. While an accused may waive the right to counsel, *whether there is a proper waiver should be clearly determined by the trial court, and it would be fitting and appropriate for that determination to appear upon the record*. [*Id*. (emphasis added).]

Additionally, as previously noted, the United States Supreme Court has expressly stated that a criminal defendant who exercises the right to self-representation "relinquishes, as a purely factual matter, many of the traditional benefits associated with the right to counsel" and must therefore " 'knowingly and intelligently' forgo those relinquished benefits." *Faretta*, 422 US at 835, citing *Johnson*, 304 US at 464-465. Although a defendant's choice to proceed pro se must be honored even if "he may conduct his own defense ultimately to his own detriment," *id*. at 834, it must still be evident from the record that the defendant was aware of the dangers and disadvantages of self-representation and made a knowing, intelligent, and voluntary waiver of the right to counsel. *id*. at 807, 835; *Johnson*, 304 US at 465; *Anderson*, 398 Mich at 368; MCR 6.005(D). "The foregoing requirements do not impermissibly infringe on the constitutional right to act as one's own counsel. Importantly, they do support the imperative that criminal adjudications must proceed in an orderly fashion and result in trustworthy guilt determinations." *Anderson*, 398 Mich at 368.

In *Faretta*, the United States Supreme Court concluded that the trial court had denied the defendant his constitutional right to conduct his own defense by "forcing" him to "accept against his will a state-appointed public defender" where the "record affirmatively show[ed]" that the defendant—who had unequivocally declared that he wanted to represent himself and did not want to be represented by counsel—"was literate, competent, and understanding, and that he was voluntarily exercising his informed free will." *Faretta*, 422 US at 835-836. The *Faretta* Court reasoned that "[t]he trial judge had warned [the defendant] that he thought it was a mistake not to accept the assistance of counsel, and that [the defendant] would be required to follow all the 'ground rules' of trial procedure." *Id*. In that case, the trial judge had specifically questioned the defendant and learned that the defendant "had once represented himself in a criminal prosecution, that he had a high school education, and that he did not want to be represented by the public defender because he believed that that office was 'very loaded down with . . . a heavy case load.' " *Id*. at 807 (ellipsis in original). The trial judge also informed the defendant as follows:

> "You are going to follow the procedure. You are going to have to ask the questions right. If there is an objection to the form of the question and it is properly taken, it is going to be sustained. We are going to treat you like a gentleman. We are going to respect you. We are going to give you every chance, but you are going to play

with the same ground rules that anybody plays. And you don't know those ground rules. You wouldn't know those ground rules any more than any other lawyer will know those ground rules until he gets out and tries a lot of cases. And you haven't done it." [*Id*. at 808 n 2.]

In *People v Overby*, the companion case in *Anderson*, our Supreme Court concluded that the trial court committed reversable error by denying Overby's request to represent himself. *Anderson*, 398 Mich at 371. Our Supreme Court acknowledged that the trial court had not "explicitly inform[ed] defendant Overby of the dangers and disadvantages of self-representation," but reasoned that the record evidenced that Overby "knew what he was doing and made his choice with his eyes open" because Overby had expressed his reasons for being dissatisfied with his appointed counsel in a "sophisticated and comprehensive" manner and also had a history of involvement with the criminal justice system. *Id*. at 370-371. Specifically, Overby had stated the following to the trial court in requesting to represent himself:

"Speaking in my own behalf, Your Honor, I would like to ask the court to enter this also. The Constitution of the State of Michigan, s 13, a citizen in any court in this State has the right to prosecute or defend any suit. I know I don't have much education, but since it seems, and it should seem to the court that I have no defense counsel that will agree with me on anything in this matter, and he is going to be forced on me, I ask that this part of the Constitution apply to me also and I'll do the best I can in defending myself." [*Id*. at 370 (emphasis omitted).]

Here, the record is devoid of any evidence as presented in *Faretta* and *Overby* from which this Court could permissibly conclude that defendant in this case made an informed choice with his "eyes open." *Anderson*, 398 Mich at 368. The trial court did not engage in a colloquy with defendant to ensure that defendant was knowingly, intelligently, and voluntarily waiving his right to counsel, and, as a consequence, the trial court did not to create a record that would allow an appellate court to review the trial court's decision to allow defendant to waive the right to counsel and proceed pro se. *Faretta*, 422 US at 835; *Johnson*, 304 US at 465; *Russell*, 471 Mich at 191; *Anderson*, 398 Mich at 368. Unlike the defendant in *Overby*, defendant in this case did not make any of his own statements indicating that he wanted to represent himself despite understanding his own limitations in the field of law that would present a risk or disadvantage. *Anderson*, 398 Mich at 370. To the extent the trial court merely confirmed that defendant had a conversation with his attorney during which she told him about the "pros and cons" of representing himself and that he would be "held to the same standards as an attorney," the record does not include the substance of these conversations and we do not know what information was relayed to defendant. Also, we cannot conclude that the record here is similar to the colloquy undertaken by the trial court in *Faretta*. Here, the trial court here did not engage in a discussion with defendant to impress upon him what the effects of being held to the same standards as an attorney would be on defendant. *Faretta*, 422 US at 808 n 2. The record is also devoid of evidence that trial court made any finding regarding whether defendant's purported waiver of his right to counsel was knowing, intelligent, and voluntary. *Russell*, 471 Mich at 191.

While recognizing the trial court is not required to follow any prescribed formula or "word-for-word litany approach" in apprising a defendant of the risks and disadvantages of self-representation, *id*., we also recognize that the trial court must make a record from which an

appellate Court could conclude that the defendant was advised of the "pros and cons" and would be held to the same standards as an attorney. Here, we cannot find evidence from which we could conclude that defendant was advised of any specific risks or disadvantages of self-representation such that we can ascertain that he made a knowing and intelligent waiver of his right to counsel without resorting to speculation and conjecture. See *Johnson*, 304 US at 464 ("[W]e do not presume acquiescence in the loss of fundamental rights.) (quotation marks and citation omitted); *People v Willing*, 267 Mich App 208, 220; 704 NW2d 472 (2005) ("Presuming waiver from a silent record is impermissible. The record must show, or there must be an allegation and evidence which show, that an accused was offered counsel but intelligently and understandingly rejected the offer. Anything less is not waiver.") (quotation marks and citation omitted); see also *Edwards v Arizona*, 451 US 477, 484; 101 S Ct 1880; 68 L Ed 2d 378 (1981) (explaining that the questions of voluntariness and of whether a waiver was *knowing and intelligent* involve two "discrete inquiries"). Although defendant had standby counsel available, "the presence of standby counsel does not legitimize a waiver-of-counsel inquiry that does not comport with legal standards." *Willing*, 267 Mich App at 228 (quotation marks and citation omitted).

Our resolution of this appeal is further guided by our Supreme Court's decision in *People v Holcomb*, 395 Mich 326; 235 NW2d 343 (1975). In *Holcomb*, 395 Mich at 334-336, our Supreme Court reversed the defendant's conviction and remanded for a new trial where the trial court had denied the defendant's request to represent himself without seeking to establish on the record whether the defendant knew what he was doing or was understandingly and voluntarily exercising his informed free will. The record was silent on this point and thus it was not evident whether the defendant had knowingly, intelligently, and voluntarily attempted to represent himself and waive his right to counsel. *Id.* at 335.

We acknowledge that *Holcomb* predates *Anderson* and that the defendant's trial in *Holcomb* occurred before the opinion in *Faretta* was issued since the *Holcomb* Court expressed its understanding that the trial court in that case could not have anticipated the holding in *Faretta*. See *id*. However, our Supreme Court cited *Holcomb* with approval in *Anderson*. *Anderson*, 398 Mich at 367. Moreover, we read *Holcomb* to stand for the proposition that where the record does not give any indication whether a defendant's waiver of the right to counsel was knowing, intelligent, and voluntary, the appropriate remedy is to reverse and remand for a new trial. Such an approach respects the importance of both constitutional rights at stake when the issue of self-representation is involved and preserves the integrity of the judicial proceedings. See *Anderson*, 398 Mich at 368.

From these precedents we glean the importance for trial courts to substantially comply with the requirements of prior precedent and court rules as cited herein when conducting a proper waiver of counsel examination. Prior precedents stress that substantial compliance is necessary in order to ensure that whenever a defendant engages in a waiver of their constitutional right to counsel, it is done knowingly, intelligently, and voluntarily. Here, having concluded that the trial court did not substantially comply with the requirements of a waiver of counsel as outlined herein, we hold that permitting defendant's conviction to stand would seriously affect the fairness, integrity, and public reputation of judicial proceedings, *Carines*, 460 Mich at 763-764, because it would essentially render the waiver of counsel requirements meaningless, see *Anderson*, 398 Mich

at 368; *Johnson*, 304 US at 464-465.  Thus, reversal is warranted in this case.  We therefore vacate defendant's conviction and remand for a new trial.[5]

Vacated and remanded for a new trial.  We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Amy Ronayne Krause
/s/ Michael J. Riordan

---

[5] Based on our resolution of this issue, defendant's remaining appellate issues are moot and we decline to address them.  *B P 7 v Bureau of State Lottery*, 231 Mich App 356, 359; 586 NW2d 117 (1998).